Allyson N. Ho *(admitted pro hac vice)*
Bradley G. Hubbard *(admitted pro hac vice)*
Matthew Scorcio *(admitted pro hac vice)*
Elizabeth A. Kiernan *(admitted pro hac vice)*
Stephen J. Hammer *(admitted pro hac vice)*
Bryston C. Gallegos *(admitted pro hac vice)*
Jason J. Muehlhoff *(admitted pro hac vice)*
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3100
Facsimile:  (214) 571-2900
aho@gibsondunn.com

Andrew W. Gould
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2575 East Camelback Rd, Suite 860
Phoenix, AZ 85016
Telephone: (602) 388-1262
State Bar No. 013234
agould@holtzmanvogel.com

David J. Hacker *(admitted pro hac vice)*
Lea E. Patterson *(admitted pro hac vice)*
FIRST LIBERTY INSTITUTE
2001 W. Plano Parkway, Suite 1600
Plano, TX 75075
Telephone: (972) 941-4444
dhacker@firstliberty.org

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Heather Rooks, | CASE NO. 2:23-CV-02028-MTL |
| Plaintiff, | |
| v. | |
| Peoria Unified School District, | **PLAINTIFF HEATHER ROOKS' MOTION FOR SUMMARY JUDGMENT** |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

Table of Authorities.................................................................................ii

Introduction .........................................................................................1

Background...........................................................................................2

   I.   Rooks quotes scripture during her own Board comments.....................2

   II.  District officials pressure Rooks to stop quoting scripture and disrupt her Board comments. ...............................................................................5

   III. Rooks seeks a determination of her rights.........................................7

Legal Standard......................................................................................7

Argument .............................................................................................7

   I.   Rooks' quotation of scripture during her individual Board comment time doesn't offend the Establishment Clause.............................................7

      A.  Supreme Court precedent establishes that public officials' quoting scripture while performing their duties doesn't violate the Establishment Clause. .................................................................8

      B.  History and tradition independently confirm that quoting scripture while performing official duties is consistent with the Establishment Clause.........................................................................................10

          1.  Our Nation's public officials have quoted scripture in performing their duties from the Founding to today..................................10

          2.  Rooks fits squarely within the history and tradition of public officials quoting scripture in performing their official duties...............14

   II.  Legislative immunity protects Rooks from adverse action based on the content of her comments during Board Meetings. ..............................16

   III. The District's actions violate Rooks' First Amendment right to free speech. ..........................................................................................17

   IV. The District's actions violate Arizona's constitutional free speech protection. ......................................................................................20

   V.  The District's actions violate Rooks' First Amendment right to free exercise of religion.............................................................................22

   VI. The District's actions violate Arizona's Free Exercise of Religion Act. ...........24

Conclusion..........................................................................................25

Certificate of Service............................................................................27

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Humanist Ass'n v. McCarty*,
  851 F.3d 521 (5th Cir. 2017) ...............................................................9, 12, 15

*Boyer v. City of Simi Valley*,
  978 F.3d 618 (9th Cir. 2020) ...........................................................................18

*Brush & Nib Studio, LC v. City of Phoenix*,
  448 P.3d 890 (Ariz. 2019)...............................................................20, 21, 24, 25

*Freedom From Religion Found., Inc. v. Chino Valley Unified*
  *Sch. Dist. Bd. of Educ.*,
  896 F.3d 1132 (9th Cir. 2018) ...........................................................................9

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
  546 U.S. 418 (2006)........................................................................................23

*Gravel v. United States*,
  408 U.S. 606 (1972)........................................................................................17

*IMDb.com Inc. v. Becerra*,
  962 F.3d 1111 (9th Cir. 2020) ...........................................................17, 18, 19

*Kennedy v. Bremerton Sch. Dist.*,
  597 U.S. 507 (2022)...........................................2, 8, 9, 10, 15, 17, 19, 22, 23

*Kotterman v. Killian*,
  972 P.2d 606 (Ariz. 1999)................................................................................14

*Lee v. City of Los Angeles*,
  908 F.3d 1175 (9th Cir. 2018) .........................................................................16

*Marsh v. Chambers*,
  463 U.S. 783 (1983)...........................................................................................9

*McDaniel v. Paty*,
  435 U.S. 618 (1978)........................................................................................22

*Mesnard v. Campagnolo in and for Cnty. of Maricopa*,
  489 P.3d 1189 (Ariz. 2021)..............................................................................16

*Momox-Caselis v. Donohue*,
  987 F.3d 835 (9th Cir. 2021) .............................................................................7

*Mountain States Tel. & Tel. Co. v. Arizona Corp. Comm'n*,
  773 P.2d 455 (Ariz. 1989)................................................................................21

*Pendley v. Mingus Union High Sch. Dist. No. 4*,
  504 P.2d 919 (Ariz. 1972)..............................................................................2, 16

*Rosenberger v. Rector and Visitors of Univ. of Virginia*,
515 U.S. 819 (1995)........................................................................................18

*Sanchez v. Coxon*,
854 P.2d 126 (Ariz. 1993)..........................................................................16, 17

*Tenney v. Brandhove*,
341 U.S. 367 (1951)....................................................................................16, 17

*Town of Greece, N.Y. v. Galloway*,
572 U.S. 565 (2014)..........................................................................8, 9, 11, 15

**Statutes, Rules, & Constitutional Provisions**

Ariz. Const. art. 2, § 6.................................................................................20, 21

Ariz. Rev. Stat. Ann. § 38-431.02.....................................................................20

Ariz. Rev. Stat. Ann. § 41-1493.01...................................................................24

Fed. R. Civ. P. 56................................................................................................7

U.S. Const. amend. I.........................................................................................22

**Other Authorities**

Collected Works of Abraham Lincoln (Roy P. Basler ed., 1953) ......................1, 12

The Documentary History of the Supreme Court
(M. Marcus et al. eds., 2007) ........................................................................12

Fast Day Proclamation (Mar. 6, 1799)...............................................................11

Horace Mann, Annual Reports on Education (1868)............................................12

Jason von Ehrenkrook,
*The Inaugural Bible: Presidential Rhetoric and the Politics of Scripture*,
7 J. Bible & Its Reception 205 (2020) ...........................................................13

Letter from G. Washington to the States (Jan. 31, 1782) .....................................10

Letter from G. Washington to the States (June 8, 1783) ....................................1, 11

Peoria Unified School District Board Meetings (2023)...............3, 4, 5, 6, 7, 14, 15, 18, 19, 23

Records of the Fed. Convention of 1787 (M. Farrand ed., 1911)...........................11

Remarks by President Biden (Aug. 26, 2021) ..................................................1, 13

**INTRODUCTION**

Since our Nation's founding, public officials have often quoted scripture in performing their duties.  In 1783, George Washington quoted Micah 6:8 when he resigned his command of the Continental Army, praying that "God would have you and the State over which you preside . . . to do Justice, to love mercy and to demean ourselves, with . . . the Characteristicks of the Divine Author of our blessed Religion." Letter from G. Washington to the States (June 8, 1783).  In 1865, President Lincoln invoked scripture in his second inaugural address, quoting Matthew 18:7's warning of "woe to that man by whom . . . offence cometh" into the world.  Second Inaugural Address (Mar. 4, 1865).  And in 2021, after withdrawing American troops from Afghanistan, President Biden told the Nation that military members "have drawn inspiration from the Book of Isaiah, when the Lord says, 'Whom shall I send . . . who shall go for us?'"  Remarks by President Biden (Aug. 26, 2021) (quoting Isaiah 6:8).

Heather Rooks isn't a famous historical figure or a household name, but she too wants to be part of the longstanding tradition of government officials quoting that familiar source of inspiration—scripture.  She's a member of the Peoria Unified School District Governing Board and, in that position, participates in the Board's public meetings.  During each meeting, the agenda includes a brief "Board comments" period where individual Board members may offer remarks of their own choosing.  Since the beginning of her public service on the Board, Rooks opened her comments by quoting a short scripture from the Bible.

District officials, however, warned her to stop, disrupted her remarks, and accused her of breaking the law.  She now asks this Court to declare her rights under

1

state and federal law to take part in a practice deeply entrenched in the history and tradition of this Nation and entirely consistent with U.S. Supreme Court precedent.  Far from being compelled by the Establishment Clause, the District's actions in this case violate Rooks' own rights of religious freedom and speech under state and federal law.  As the Supreme Court put it recently in the landmark case of *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), a "government entity's concerns about phantom constitutional violations" never "justify actual violations of an individual's First Amendment rights." *Id.* at 543.  The Court should grant summary judgment to Rooks, award her nominal damages, and grant her declaratory relief.

## BACKGROUND

**I.      Rooks quotes scripture during her own Board comments.**

Heather Rooks was elected to the five-member Peoria Unified School District Governing Board in 2022 and took her seat in January 2023.  Ans. ¶¶ 2, 14.  Among the Board's high-level governance responsibilities are making policy and personnel decisions.  Ans. ¶ 2.  The Board doesn't manage the day-to-day operations of any school, nor does it educate or teach any students.  Ans. ¶ 12.

The Board exercises delegated legislative authority from Arizona's state government.  *See Pendley v. Mingus Union High Sch. Dist. No. 4*, 504 P.2d 919, 924 (Ariz. 1972) (recognizing "legislative delegation of power to the school board" to adopt "regulations").  The Board's "legislative function is the policy making aspect of the school system" and it "is the policy of the Board to retain and exercise full legislative authority and control over the schools."  Ex. 1 at 2 (District's RFA Resp.).

1   The Board conducts business through its meetings.  At each meeting, "Board
2   comments" time is set aside for members to make individual remarks entirely of their
3   own choosing.  Ans. ¶ 18.  Board members commonly use this time to recognize
4   members of the District community and extend well-wishes or encouragement.  Ans.
5   ¶¶ 2, 18.  Rooks used her Board comments along those same lines.  *E.g.*, Bd. Mtg. (Feb.
6   9, 2023), https://tinyurl.com/4c7k95mw; Bd. Mtg. (Mar. 9, 2023), https://tinyurl.com/
7   mrxvdpvu; Bd. Mtg. (Apr. 13, 2023), https://tinyurl.com/yc23kj94.[1]

8   In addition to congratulating sports teams, thanking schools for allowing her to
9   visit, and wishing the public happy holidays, Rooks also used her Board comments time
10   to fortify herself to perform her official duties by reciting scripture.  Rooks Decl. ¶ 5.
11   As a Christian, Rooks believes that the Bible is the inspired word of God and is
12   profitable to instruct and encourage in all of life.  Rooks Decl. ¶ 4.  And in her religious
13   belief and practice, scriptures from the Bible are used to (among other things) guide
14   believers in daily life, fortify and encourage them, and communicate truth.  *Id.*

15   For example, at her first Board meeting, Rooks recited:  "Have I not commanded
16   you?  Be strong and courageous.  Do not be afraid; do not be discouraged, for the Lord
17   your God will be with you wherever you go."   Bd. Mtg. (Jan. 12, 2023),
18   https://tinyurl.com/mty7cvpc (quoting Joshua 1:9).  Her other choices were similar:

19   - "So do not fear, for I am with you; do not be dismayed, for I am
    your God.  I will strengthen you and help you; I will uphold you
20   with my righteousness."   Bd. Mtg. (Feb. 9, 2023),
    https://tinyurl.com/4c7k95mw (quoting Isaiah 41:10).

21

22   ───────────
    [1]   The parties have stipulated to authenticity of the Peoria Unified School District
    Governing Board meeting videos on the District's YouTube channel.  Dkt. 15 ¶ 4.
23

3

- "Train up a child in the way he should go; and when he is old, he will not depart from it."  Bd. Mtg. (Feb. 23, 2023), https://tinyurl.com/3sajx6em (quoting Proverbs 22:6).

- "Stay awake, stand firm in your faith, be brave, be strong."  Bd. Mtg. (Mar. 9, 2023), https://tinyurl.com/mrxvdpvu (quoting 1 Corinthians 16:13).

- "I will keep my eyes always on the Lord.  With him at my right hand, I will not be shaken."  Bd. Mtg. (Apr. 13, 2023), https://tinyurl.com/yc23kj94 (quoting Psalm 16:8).

- "Keep me safe, my God, for in you I take refuge."  Bd. Mtg. (Apr. 27, 2023), https://tinyurl.com/2tuu8d5y (quoting Psalm 16:1).

- "God is greater than the giants you face."  Bd. Mtg. (May 11, 2023), https://tinyurl.com/bdzhyjme (paraphrasing 1 John 4:4).

- "That your faith might not rest in the wisdom of men but in the power of God."  Bd. Mtg. (May 22, 2023), https://tinyurl.com/5n6h3tfn (quoting 1 Corinthians 2:5).

- "Therefore, put on every piece of God's armor so that you will be able to resist the enemy in the time of evil.  Then after the battle you will be standing firm."  Bd. Mtg. (June 8, 2023), https://tinyurl.com/2w4svhcz (quoting Ephesians 6:13).

- "Let us hold tightly without wavering to the hope we affirm, for God can be trusted to keep his promise." Bd. Mtg. (June 22, 2023), https://tinyurl.com/4t7uujac (quoting Hebrews 10:23).

In each instance cited above, Rooks briefly recited a scripture without comment, elaboration, or asking for anyone present to participate in any way.  After reciting the scripture, she proceeded directly to making other remarks.  *E.g.*, Bd. Mtg. (Feb. 9, 2023), https://tinyurl.com/4c7k95mw; Bd. Mtg. (Mar. 9, 2023), https://tinyurl.com/mrxvdpvu; Bd. Mtg. (Apr. 13, 2023), https://tinyurl.com/yc23kj94.

Other Board members use their Board comments to speak on a variety of subjects.  In August 2022, former Board member Cory Underhill quoted a TED Talk

4

1   by author Julia Dhar called "How to Disagree Productively and Find Common

2   Ground."   Bd. Mtg. (Aug. 25, 2022), https://tinyurl.com/2wa7aahh.   Underhill

3   explained that "contempt has replaced communication" in society, so she encouraged

4   attendees to instead maintain an open mind to others' ideas.  *Id*.  No one interrupted or

5   challenged Underhill's remarks, nor was she reprimanded for them.   Ex. 1 at 4

6   (District's RFA Resp.).   And in February 2021, Board President Sandoval told a

7   personal story about his role as a pronouncer for a regional spelling bee without any

8   objection or apparent reprimand from the District.  Bd. Mtg. (Feb. 25, 2021), https://

9   tinyurl.com/4kv67ktj.

10  **II.     District officials pressure Rooks to stop quoting scripture and disrupt her
             Board comments.**

11  
12          Two outside groups began contacting Rooks and the District to argue that

12  Rooks' reciting of scriptures broke the law.  In February 2023, Secular Communities

13  for Arizona, Inc. wrote the District that reciting scripture "violate[s] the Establishment

14  Clause."  Ex. 2 at 2.  Similarly, in May 2023, Freedom From Religion Foundation, Inc.

15  wrote the District that Rooks was "using her position on the board to foist her personal

16  religious beliefs upon district parents and community members."  Ex. 3 at 1.

17          Freedom From Religion threatened the District with legal "liability," reciting the

18  organization's history of suing school districts.   Ex. 3 at 2.   In June 2023, the

19  organization again wrote the District that "[o]ur nation is founded on a godless

20  Constitution" and "[t]he board should move to censure any school board members who

21  . . . push[ ] their personal religious beliefs during board meetings."  Ex. 4 at 2–3.

22  
23

1    Undaunted, Rooks continued her practice of quoting scriptures during her Board

2  comment time throughout this period—but District officials consistently pressured

3  Rooks to stop.  In a February 2023 email to all Board members, including Rooks, the

4  "Executive Assistant, Superintendent & Governing Board[,] Peoria Unified School

5  District" wrote that "a board member . . . should not read scripture during a board

6  meeting, as it violates the Establishment Clause" and "could be a violation of the Open

7  Meeting Law."  Ex. 5 at 1.  The email also asserted that "the First Amendment is not

8  applicable in this situation."  Ex. 5 at 1.  The email said it was conveying "guidance"

9  from "the Governing Board's attorney."  Ex. 5 at 1.

10   At a Board meeting a little over a week after that email, Board President

11  Sandoval interrupted Rooks after she quoted scripture during her Board comments and

12  announced that "reciting scripture at a Board meeting on this side of the dais goes

13  against the Establishment Clause" and "go[es] against Open Meeting Laws," and that

14  "we were directed by Legal on this, so it is important that I bring it up."  Bd. Mtg. (Mar.

15  9, 2023), https://tinyurl.com/4wmxnjw2.  Rooks tried to point out that her comments

16  just "relat[ed] to [her] service as [a] Board member[ ]," but Sandoval interrupted her

17  again and she refrained from speaking further.  *Id.*

18   In July 2023, the District's attorney emailed Board members again—warning

19  Rooks, in particular, that "this is not the first time that you have been asked by"

20  Freedom From Religion "to refrain from offering bible verses," and "[t]he law is clear

21  that Board members, acting in their official capacities at Board meetings, may not pray

22  or offer bible verses at Board meetings because it is a violation of the establishment

23

6

1   clause." Ex. 6 at 1–2.  The District's attorney further opined that "offering bible verses

2   during a board report is a violation of the Open Meeting Law."  Ex. 6 at 2.  And she

3   warned that Freedom from Religion had "threatened . . . further action, such as filing a

4   lawsuit." Ex. 6 at 1.

5   **III.    Rooks seeks a determination of her rights.**

6          As a direct result of the District's pressure and warnings that quoting scripture

7   during her comment period "violates the Establishment Clause," Rooks chose to

8   "refrain from reciting Bible verses at this time."   Bd. Mtg. (July 13, 2023),

9   https://tinyurl.com/4rcbzbst.  She filed this action to clarify and confirm her rights

10  under federal and state law, and seeks a declaratory judgment and nominal damages.

11                          LEGAL STANDARD

12         Summary judgment is appropriate when "the movant shows that there is no

13  genuine dispute as to any material fact and the movant is entitled to judgment as a

14  matter of law."  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the

15  outcome of the [action] under the governing law will properly preclude the entry of

16  summary judgment."  *Momox-Caselis v. Donohue*, 987 F.3d 835, 841 (9th Cir. 2021).

17                            ARGUMENT

18  **I.    Rooks' quotation of scripture during her individual Board comment time
       doesn't offend the Establishment Clause.**

19         The District attempts to justify its instruction that Rooks abstain from quoting

20  scripture by engaging in fearmongering about violating the Establishment Clause.  But

21  as the Supreme Court has made clear time and again—most recently in the *Kennedy*

22  case—a "government entity's concerns about phantom constitutional violations" never

23

                                    7

"justify actual violations of an individual's First Amendment rights."  597 U.S. at 543.

Rooks' quotation of scripture doesn't come close to violating the Establishment Clause.

That conclusion is compelled by Supreme Court precedent and confirmed by history

and tradition.

> **A.   Supreme Court precedent establishes that public officials' quoting scripture while performing their duties doesn't violate the Establishment Clause.**

The Supreme Court "has instructed that the Establishment Clause must be

interpreted by reference to historical practices and understandings." *Kennedy*, 597 U.S.

at 535 (quotation marks omitted).  Where a practice "fits within [a] tradition long

followed" by state and federal officials, it comports with the Establishment Clause.

*Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 577 (2014).  And "[t]he line that

courts and governments must draw between the permissible and the impermissible has

to accord with history and faithfully reflect the understanding of the Founding Fathers."

*Kennedy*, 597 U.S. at 535–36 (cleaned up).

The Supreme Court applied these governing legal standards in the context of a

materially identical practice—legislative prayer.  In *Town of Greece*, the Court held

that a town board could open its meetings with prayer because "a brief, ceremonial

prayer as part of a larger exercise in civic recognition . . . comports with our tradition

and does not coerce participation by nonadherents."  572 U.S. at 591–92.  "Some of the

ministers" in that case invoked "scripture" in their prayers.  *Id*. at 572.  If reciting

scriptures within a prayer to open a town board meeting is consistent with the

Establishment Clause—and it plainly is—then simply reciting scripture within an

individual board member's comment time is, if anything, even more so.

That conclusion is confirmed by the Supreme Court's recent decision in *Kennedy*, which held that a high school football coach's "utter[ing]" "three prayers" in students' presence after a football game didn't offend the Establishment Clause. 597 U.S. at 529. That's because "[r]espect for religious expressions is indispensable to life in a free and diverse Republic," whether those expressions are "manifest through the spoken word or a bowed head." *Id.* at 543. Rooks' "spoken word[s]" here are no exception to that rule. It makes no difference that Rooks spoke those words at a school board meeting rather than at a town board meeting or on a football field. The Supreme Court rejected a similar argument in *Town of Greece*—refusing to draw a constitutional distinction between the state legislature in *Marsh v. Chambers*, 463 U.S. 783 (1983), and the town board in *Town of Greece*. 572 U.S. at 586–87.

The Fifth Circuit faithfully followed *Town of Greece* in holding that prayer at a school-board meeting is likewise consistent with the Establishment Clause—noting that specifically, "from the early nineteenth century, at least eight states had some history of opening prayers at school-board meetings," and generally, since "the First Congress," there has been a "well-established practice of opening meetings of deliberative bodies with invocations." *Am. Humanist Ass'n v. McCarty*, 851 F.3d 521, 527 (5th Cir. 2017).[2]

---

[2]   To the extent Ninth Circuit cases have gone the other way in reliance on *Lemon*, they're no longer good law. *Compare Kennedy*, 597 U.S. at 535 ("this Court long ago abandoned *Lemon* and its endorsement test offshoot"), *with Freedom From Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of Educ.*, 896 F.3d 1132, 1149 (9th Cir. 2018) (holding that "under *Lemon*," a school board's opening prayer "violates the Establishment Clause").

Again, if, as the Supreme Court has held, that practice—which includes quoting scripture in the context of prayer—doesn't offend the Establishment Clause, then neither does Heather Rooks' practice of quoting scripture during her individual Board comment time.  If anything, this case is even further away from the constitutional line.

**B.    History and tradition independently confirm that quoting scripture while performing official duties is consistent with the Establishment Clause.**

Even if this Court were writing on a clean slate without the benefit of the Supreme Court's controlling decisions in *Town of Greece* or *Kennedy*, the long history and tradition history of public officials quoting scripture in the course of their duties independently confirms that Heather Rooks' practice fits comfortably within that tradition—and is constitutional as a result.  *See Kennedy*, 597 U.S. at 535.

**1.    Our Nation's public officials have quoted scripture in performing their duties from the Founding to today.**

One of the most prominent Founders, George Washington, frequently quoted scripture in his official speeches and correspondence.  For example, he invoked scripture to encourage and persuade in official reports that he transmitted to the States.  In 1782, he quoted Ecclesiastes 9:11 to remind the States that "the race is not always to the swift or the battle to the strong."  Letter from G. Washington to the States (Jan. 31, 1782).[3]  And in 1783, when he resigned his command of the Continental Army, he quoted Micah 6:8 in praying that "God would have you and the State over which you preside . . . to do Justice, to love mercy and to demean ourselves, with . . . the

---

[3]    *Available at*  https://founders.archives.gov/documents/Washington/99-01-02-07757 (last accessed Mar. 14, 2024).

Characteristicks of the Divine Author of our blessed Religion."   Letter from G. Washington to the States (June 8, 1783).[4]

George Washington's frequent use of the scriptures while performing his official duties was no outlier—indeed, scripture saturated the political speech of the Founding era.  At pivotal moments during the Constitutional Convention, for example, Benjamin Franklin admonished the States' assembled delegates by quoting Psalm 127:1—"except the Lord build the House, they labor in vain that build it," 1 Records of the Fed. Convention of 1787 at 451 (M. Farrand ed., 1911), and implored them to "remember the character which the Scripture requires in Rulers"—"that they should be men hating covetousness."  2 Records of the Fed. Convention at 249 (quoting, in final phrase, Exodus 18:21).  It beggars belief that the Constitution, which was framed by men who quoted scripture in that very process to encourage and exhort one another, is somehow offended by Heather Rooks doing the same thing.

In the early years after the Constitution's adoption, government officials of all three branches continued to use scripture in their official communications.   In proclaiming a national day of fasting in 1799, President John Adams recited Proverbs 14:34—"righteousness exalteth a nation, but [ ] sin is the reproach of any people."  Fast Day Proclamation (Mar. 6, 1799).[5]  In Congress in the early 1800s, one of "the Senate's first chaplains" recited "the Lord's Prayer," which is found in Matthew 6:9–13.  *Town*

---

[4]   *Available at*  https://founders.archives.gov/documents/Washington/99-01-02-11404 (last accessed Mar. 14, 2024).

[5]   *Available at*  https://founders.archives.gov/documents/Adams/99-02-02-3372 (last accessed Mar. 14, 2024).

11

*of Greece*, 572 U.S. at 578.  And in 1800, Supreme Court Justice William Paterson recited Proverbs 29:2 in charging a grand jury:  "when the righteous are in authority, the people rejoice."  3 The Documentary History of the Supreme Court 436 (M. Marcus et al. eds., 2007).

The tradition of quoting scripture that marked the early days of the Republic continued before, during, and after the crucible of the Civil War.  In 1858, candidate Abraham Lincoln quoted Mark 3:25 to explain that "[a] house divided against itself cannot stand."  Speech, Repub. State Conv. (June 16, 1858), in 2 Collected Works of Abraham Lincoln 461 (Roy P. Basler ed., 1953).  In 1865, President Lincoln reminded Americans that the Gospel of Matthew teaches "[w]oe unto the world because of offences! for it must needs be that offences come; but woe to that man by whom the offence cometh!"  Second Inaugural Address (Mar. 4, 1865), in 8 Collected Works 333 (quoting Matthew 18:7).

Nor was the tradition of quoting scripture in the nineteenth century limited to Presidents and senior officials.  It extended to speech by school officials, too. Beginning in "the early nineteenth century, at least eight states" followed the analogous practice of "opening prayers at school-board meetings."  *McCarty*, 851 F.3d at 527.  As Secretary of the Massachusetts Board of Education, noted educator Horace Mann regularly quoted scripture in his annual reports.  Horace Mann, Annual Reports on Education 707 (1868) (quoting Matthew 6:10); *accord* Report for 1847, in *id*. at 612 (quoting Matthew 5:9), *id*. at 638 (quoting Micah 6:8); Report for 1845, in *id*. at 446 (quoting 1 Peter 5:2–3).

12

1    Twentieth-century officials marked no exception to the tradition of quoting

2    scripture in official duties.  Presidents Franklin D. Roosevelt, Kennedy, Carter, and

3    Reagan (among others) all quoted scripture in their inaugural addresses.  Jason von

4    Ehrenkrook, *The Inaugural Bible: Presidential Rhetoric and the Politics of Scripture*,

5    7 J. Bible & Its Reception 205, 230–39 (2020) (collecting quotations).  For example,

6    President Kennedy urged the Nation to "heed . . . the command of Isaiah—to 'undo the

7    heavy burdens . . . and to let the oppressed go free.'"  Inaugural Address (Jan. 20, 1961),

8    quoted in *id.* at 235 (quoting Isaiah 58:6).

9    The same practice of quoting scripture continued into the twenty-first century.

10   At his 2009 inauguration, President Obama told the Nation that "in the words of

11   Scripture, the time has come to set aside childish things."  Inaugural Address (Jan. 20,

12   2009), quoted in *id.* at 237 (quoting 1 Corinthians 13:11).  President Trump in 2017

13   recited "[h]ow good and pleasant it is when God's people live together in unity."

14   Inaugural Address (Jan. 20, 2017), quoted in *id.* at 238 (quoting Psalm 133:1).

15   President Biden, too, after withdrawing American troops from Afghanistan in 2021,

16   told the nation that military members "have drawn inspiration from the Book of Isaiah,

17   when the Lord says, 'Whom shall I send . . . who shall go for us?'"  Remarks by

18   President Biden (Aug. 26, 2021) (quoting Isaiah 6:8–9).[6]

19   The State of Arizona fits solidly within this tradition of officials quoting

20   scripture in the United States.  "[R]eligion has never been hermetically sealed off from

21

22       [6]  *Available    at*   https://www.whitehouse.gov/briefing-room/speeches-remarks/
     2021/08/26/remarks-by-president-biden-on-the-terror-attack-at-hamid-karzai-internat
23   ional-airport/ (last accessed Mar. 14, 2024).

13

other institutions in this state, or the nation." *Kotterman v. Killian*, 972 P.2d 606, 622–23 (Ariz. 1999). Arizona's Constitution begins with the preamble "[w]e the people of the State of Arizona, grateful to Almighty God for our liberties, do ordain this Constitution." *Id.* at 623. And "to this day[,] Arizona legislative sessions begin with a prayer delivered by the Chaplain of the Day." *Id.* The Peoria City Council also begins each meeting with a prayer. Ex. 7 (City Council Meeting Notice & Agenda (Sept. 19, 2023)) (listing "Invocation" on meeting agenda); Video Recording, City Council Meeting (Sept. 19, 2023) ("Please stand for the invocation by Dr. Steve Isaac of the Reunion Church").[7]

> **2.      Rooks fits squarely within the history and tradition of public officials quoting scripture in performing their official duties.**

The summary-judgment record establishes that Rooks' practice is fully consistent with history and tradition. She recites a short scripture without comment or elaboration. *E.g.*, Bd. Mtg. (Feb. 9, 2023), https://tinyurl.com/4c7k95mw; Bd. Mtg. (Mar. 9, 2023), https://tinyurl.com/mrxvdpvu; Bd. Mtg. (Apr. 13, 2023), https://tinyurl.com/yc23kj94. In the same tradition as Washington's letters to the States, Franklin's speeches to the Convention, Mann's reports on public education, and presidential speeches from Lincoln to Biden, Rooks briefly includes scriptures in her individual Board comments to fortify herself to perform her duties. *See* Rooks Decl. ¶¶ 4–5.

For example, at the February 9, 2023 Board meeting, Rooks began her Board

---

[7]     *Available    at* https://peoriaaz.ompnetwork.org/embed/sessions/277114/city-council-meetings-09-19-2023, at 1:12:56–13:01 (last accessed Mar. 14, 2024).

comments with a scripture and then immediately proceeded to the same topics that all members undisputedly address.  "'So do not fear, for I am with you; do not be dismayed, for I am your God.  I will strengthen you and help you; I will uphold you with my righteous right hand.'  I first wanted to congratulate all the students also who worked hard on their patriotic speeches this week."  Bd. Mtg. (Feb. 9, 2023), https://tinyurl.com/4c7k95mw (quoting Isaiah 41:10).  That's well within the "tradition long followed" by American officials from the Founding to today, so it doesn't violate the Establishment Clause.  *See Town of Greece*, 572 U.S. at 577.

Just as in *Town of Greece*, Rooks' practice of reciting a short passage of scripture hasn't—and couldn't have—run afoul of the Establishment Clause by directing anyone to participate, singling anyone out, or suggesting how Rooks (much less the Board) makes decisions.[8]  *See* 572 U.S. at 588.  Instead, as with the prayers in *Town of Greece*, reciting a scripture is "an opportunity" for Rooks to "show who and what [she is] without denying the right to dissent by those who disagree."  *Id.*  In sum, Rooks' brief quotations of scripture during her individual Board comments time fit comfortably within history and tradition, comport with Supreme Court precedent, and comply with the Establishment Clause.

---

[8]   As a matter of law, under *Kennedy* it doesn't matter whether students may have been present at Board meetings because "school" environments are part of the "long constitutional tradition under which learning how to tolerate diverse expressive activities has always been 'part of learning how to live in a pluralistic society.'"  597 U.S. at 541; *see McCarty*, 851 F.3d at 527 ("presence of students at" meetings doesn't change propriety of school-board prayer).  In any event, as the District admits, it can't identify any student who was required to be present at any Board meeting where Rooks recited scripture.  Ex. 1 at 4 (District's RFA Resp.); *see Town of Greece*, 572 U.S. at 590 (freedom to attend or not shows there's no "impermissible coercion").

## II.    Legislative immunity protects Rooks from adverse action based on the content of her comments during Board Meetings.

Additionally, Rooks may recite scriptures during her Board comments because she has legislative immunity from any liability or reprisal for doing so.   "Absolute legislative immunity is rooted in common law and embodied in both the United States and the Arizona Constitutions and the principles underlying separation of governmental powers."  *Mesnard v. Campagnolo in and for Cnty. of Maricopa*, 489 P.3d 1189, 1193 (Ariz. 2021).   "The rationale for the [legislative] privilege—to allow duly elected legislators to discharge their public duties without concern of adverse consequences outside the ballot box—applies equally to federal, state, and local officials."  *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018).

Under Arizona law, legislative immunity applies to an official (i) who is a member of a body with legislative powers, and (ii) who is "performing a legislative function."  *Sanchez v. Coxon*, 854 P.2d 126, 130 (Ariz. 1993) (town councilman was immune from state defamation claim); *see Mesnard*, 489 P.3d at 1293–94.  Similarly, federal legislative immunity protects (i) "members of a legislature" (ii) that are engaged in "legislative activity."  *Tenney v. Brandhove*, 341 U.S. 367, 376–78 (1951) (state legislator was immune from federal claims).  Rooks' reciting of scripture satisfies each element.

*First*, as a matter of law, Board members are legislators exercising the State's delegated legislative power.  Arizona has made a "legislative delegation of power to the school board" to adopt "regulations" for school governance.  *Pendley*, 504 P.2d at 924.  The Board's "legislative function is the policy making aspect of the school

16

system" and it "is the policy of the Board to retain and exercise full legislative authority and control over the schools." Ex. 1 at 2 (District's RFA Resp.). The Board is a "subordinate legislative bod[y]" to which "the Arizona legislature [has] delegated legislative powers." *Sanchez*, 854 P.2d at 130.

*Second*, Rooks reciting scripture during her Board comments is "speech or debate" at the very "heart" of legislative immunity. *Gravel v. United States*, 408 U.S. 606, 625 (1972); *Sanchez*, 854 P.2d at 130. And because the "central role" of legislative immunity is "to prevent intimidation of legislators by the Executive," it protects a member of a legislative body like Rooks from adverse action by the same government's executive arm—like the District and its Superintendent. *Gravel*, 408 U.S. at 617. The immunity protects Rooks from such adverse action and entitles her to a declaration that she has legislative immunity for reciting scriptures during her Board comments. *See Tenney*, 341 U.S. at 376–77.

## III.    The District's actions violate Rooks' First Amendment right to free speech.

The District was so concerned about avoiding what *Kennedy* calls "phantom violations," 597 U.S. at 543, that it collided head-on with Rooks' own First Amendment rights. The District singled out her speech for opprobrium and censorship because of that speech's religious content and viewpoint—as shown by the blind eye that the District turned toward comparable secular expressions in Board comments—without any compelling justification to do so.

The First Amendment prohibits government from imposing content- and viewpoint-based restrictions on speech. Content-based restrictions "are disfavored and 'presumptively invalid,'" *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120 (9th Cir.

17

2020), and viewpoint discrimination is "an egregious form of content discrimination." *Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995). "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id*. Such regulation is unlawful unless the government can pass strict scrutiny by proving the regulation is "narrowly tailored to serve compelling state interests." *Boyer v. City of Simi Valley*, 978 F.3d 618, 621 (9th Cir. 2020).

The summary-judgment record conclusively establishes that the District targeted Rooks' speech because of its religious content and viewpoint.  In each of its communications, the District's express justification for trying to silence her, disrupt her speech, and threaten her with third-party litigation has been that she is "read[ing] Scripture," "reciting scripture," and "offering bible verses."  Ex. 5 (District Executive Assistant email); Bd. Mtg. (Mar. 9, 2023), https://tinyurl.com/4wmxnjw2 (Sandoval interrupting Rooks); Ex. 6 at 1–2 (District attorney email).  The District indisputably "single[d] out" the religious content of Rooks' speech "for differential treatment," *see IMDb.com*, 962 F.3d at 1120, and tried to silence her religious viewpoint.  *See Rosenberger*, 515 U.S. at 831.

That's confirmed by record evidence that, when Board members use their Board comment time to express comparable secular thoughts, the Board does nothing to stop that speech or reprimand its speaker.  For example, when then-Board member Cory Underhill quoted and elaborated at length on an inspirational TED Talk, no District

18

1    official     challenged     or     reprimanded     her.     Bd.   Mtg.   (Aug.   25,   2022),

2    https://tinyurl.com/2wa7aahh; Ex. 1 at 4 (admitting Underhill wasn't reprimanded).

3         The District's actions therefore warrant review under—and fail—strict scrutiny.

4    *IMDb.com*, 962 F.3d at 1121.  Because quoting scripture in official duties doesn't

5    violate the Establishment Clause, the District has no colorable interest in stopping

6    Rooks' speech. *See Kennedy*, 597 U.S. at 532–33.  And no amount of "tailor[ing]" can

7    justify stifling constitutionally protected speech.  *Id.*   In any event, the District's

8    regulation of Rooks' speech isn't narrowly tailored—it purports to restrict her speech

9    based on an overbroad Establishment Clause theory that bars speech beyond the kind

10   that provision actually prohibits. *See supra* Part I.

11        The District's fallback Open Meeting Law justification isn't narrowly tailored

12   either, because it prohibits speech that the Open Meeting Law itself doesn't regulate

13   one way or another.  The District has asserted that any Board comments beyond a "brief

14   summary of current events as it relates to . . . school visits, recognizing students, staff,

15   etc. . . . could be a violation of the Open Meeting Law."  Ex. 5 (District Executive

16   Assistant email).  But the District's refusal to reprimand comparable secular Board

17   comments—like Underhill's TED Talk and, in another instance, Sandoval's inclusion

18   of a personal story in his Board comments—confirms that this argument is mere pretext

19   to paper over the District's real complaint that Rooks is "read[ing] Scripture," "reciting

20   scripture," and "offering bible verses."  Ex. 5 (District Executive Assistant email); Bd.

21   Mtg. (Mar. 9, 2023), https://tinyurl.com/4wmxnjw2 (Sandoval interrupting Rooks); Ex.

22   6 at 1–2 (District attorney email).

23

19

In any event, it's difficult to see how Rooks' comments could possibly run afoul of the Open Meeting Law, which simply requires that public notice of meetings include "an agenda" of "the specific matters to be discussed, considered or decided at the meeting."   Ariz. Rev. Stat. Ann. § 38-431.02(G)–(H).   Rooks' scripture quotations aren't "specific matters to be discussed, considered or decided at the meeting[s]." Without asking if individual Board comments even trigger that general rule, the District parsed an exception that permits a "member of a public body" to "present a brief summary of current events without listing in the agenda the specific matters to be summarized" so long as "[t]he summary is listed on the agenda" and no "legal action" is taken on those matters without additional notice.  *Id.* § 38-431.02(K).  That exception is irrelevant, though, because Rooks' quotation of scriptures isn't required to be listed on an agenda in the first place.

**IV.     The District's actions violate Arizona's constitutional free speech protection.**

Under Arizona's Constitution, "[e]very person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right."  Ariz. Const. art. 2, § 6.  In Arizona, just as under federal First Amendment protections, "[c]ontent-based laws must satisfy strict scrutiny."  *Brush & Nib Studio, LC v. City of Phoenix*, 448 P.3d 890, 913 (Ariz. 2019).  The Arizona Supreme Court has "often relied on federal case law in addressing free speech claims under the Arizona Constitution."  *Id.* at 903.  So the District has violated Rooks' free-speech rights under the Arizona Constitution for the same reasons it has violated the First Amendment.  *See supra* Part III.

Indeed, the Arizona Constitution "by its terms . . . provides *broader protections for free speech than the First Amendment.*"  *Brush & Nib Studio*, 448 P.3d at 902 (emphasis added).  That's because, while "the First Amendment is phrased as a constraint on government," Arizona's "provision, by contrast, is a guarantee of the individual right to 'freely speak, write, and publish,' subject only to constraint for the abuse of that right."  *Id.*  Arizona's Constitution offers two additional protections relevant here.

*First*, under Arizona law, "*any restriction* on [constitutional speech] rights 'must be drawn with narrow specificity,'" whether or not it's content based.  *Mountain States Tel. & Tel. Co. v. Arizona Corp. Comm'n*, 773 P.2d 455, 463 (Ariz. 1989) (emphasis added) (requiring narrow specificity for time, place, or manner restriction).   The District's Establishment Clause and Open Meeting Law justifications for restricting Rooks' speech are overbroad and purport to regulate what's actually protected speech, so they can't meet that narrow tailoring standard.  *See supra* Part III.

*Second*, the text of Arizona's Constitution provides that Rooks may "freely speak . . . on all subjects" while remaining "responsible" for any "abuse" of the free-speech right.  Ariz. Const. art. 2, § 6.  Here, the Board would impose a prior restraint on Rooks' ability to speak based on the subject matter of her speech.  But restraining speech in advance is distinct from imposing "responsibility" for it, which is the only permitted carveout for government speech limitations.   And that carveout has no application here.

21

**V.     The District's actions violate Rooks' First Amendment right to free exercise of religion.**

Under the First Amendment, government may not "prohibit[ ] the free exercise" of religion.  U.S. Const. amend. I.  This provision "protects not only the right to harbor religious beliefs inwardly and secretly," but also "the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life."  *Kennedy*, 597 U.S. at 524.

"[A] plaintiff may carry the burden of proving a free exercise violation" by "showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'"  *Id.* at 525.  Once a plaintiff carries this burden, the "Court will find a First Amendment violation unless the government can satisfy 'strict scrutiny' by demonstrating its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest."  *Id.*  Here, the District has burdened Rooks' sincere religious practice without any compelling interest in doing so, and it has no narrowly tailored compelling interest.

The District burdened Rooks' sincere religious practice by targeting her for quoting scriptures while exempting comparable secular conduct.  There's no genuine fact dispute that Rooks' recitation of scripture at Board meetings is motivated by her sincere religious belief.  Rooks Decl. ¶¶ 4–5; *see Kennedy*, 597 U.S. at 525.  And the District substantially burdened this sincere religious practice by forcing Rooks to choose between following the precepts of her religion and facing continued disruption, threats, and adverse official action.  *See Kennedy*, 597 U.S. at 525–26 (discipline substantially burdens religious exercise); *McDaniel v. Paty*, 435 U.S. 618, 626 (1978)

22

1   (state burdened religious exercise by conditioning it "on the surrender" of "civil right"

2   to hold public office).

3        The District's actions in preventing Rooks from reciting scripture at Board

4   meetings aren't neutral or generally applicable.  "A government policy will not qualify

5   as neutral if it is 'specifically directed at . . . religious practice'" and "will fail the

6   general applicability requirement if it 'prohibits religious conduct while permitting

7   secular conduct that undermines the government's asserted interests in a similar way.'"

8   *Kennedy*, 597 U.S. at 526.  The District's actions aren't neutral because the District

9   specifically targeted religious practice—it's acting against Rooks because she is

10  "read[ing] Scripture," "reciting scripture," and "offering bible verses."  Ex. 5 (District

11  Executive Assistant email); Bd. Mtg. (Mar. 9, 2023), https://tinyurl.com/4wmxnjw2

12  (Sandoval interrupting Rooks); Ex. 6 at 1–2 (District attorney email).

13       And the District's actions aren't generally applicable because it permitted

14  secular conduct that violates the same asserted interest of limiting Board comments to

15  "current events" only.  The District permitted Underhill to quote from and elaborate on

16  a TED Talk while barring Rooks from quoting the Bible, and it permitted Sandoval to

17  tell a personal story unrelated to District business.  Bd. Mtg. (Aug. 25, 2022),

18  https://tinyurl.com/2wa7aahh; Ex. 1 at 4 (admitting Underhill wasn't reprimanded); Bd.

19  Mtg. (Feb. 25, 2021), https://tinyurl.com/4kv67ktj (Sandoval's personal comments).

20       It's plain, too, that the District has no narrowly tailored compelling interest in

21  stopping Rooks from quoting scripture.  *Supra* Part III; *see Gonzales v. O Centro*

22  *Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430–31 (2006) (government must

23

show "compelling interest" as to "*the particular claimant*" whose religious exercise is burdened) (emphasis added). So its actions to pressure, disrupt, and silence her do not pass strict scrutiny and violate Rooks' First Amendment right to exercise religion.

## VI.    The District's actions violate Arizona's Free Exercise of Religion Act.

The District's actions also run afoul of Arizona's statutory protections for the free exercise of religion. The Free Exercise of Religion Act provides that "government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." Ariz. Rev. Stat. Ann. § 41-1493.01(B). Under the Act, "the party raising a free exercise claim must prove that: (1) their action or refusal to act is motivated by a religious belief, (2) the religious belief is sincerely held, and (3) the government's regulation substantially burdens the free exercise of their religious beliefs." *Brush & Nib Studio*, 448 P.3d at 918. Once Rooks "proves these elements, then the burden shifts to the government" to satisfy strict scrutiny. *Id.* at 918–19.

Arizona law is even more protective of religious exercise than the federal First Amendment. Unlike the First Amendment, Arizona law doesn't require plaintiffs to show that the government policy isn't neutral or generally applicable—instead, any government action violates the Act if it substantially burdens sincere religious exercise and lacks a narrowly tailored compelling interest. *Brush & Nib Studio*, 448 P.3d at 918. If Rooks can establish a violation of the Free Exercise Clause, she has already shown a violation of the Act.

But even if the District could raise any doubt about whether its actions are neutral or generally applicable—including by resort to its Open Meeting Law theory—Rooks

24

would still prevail on her statutory claim under the Free Exercise of Religion Act. There's no dispute that Rooks' reciting scripture is motivated by her sincere religious beliefs.  And the District's actions in disrupting her remarks and pressuring her to stop burdened her religious exercise because the District forced her "to choose between following the precepts of [her] religion" and facing adverse action. *Brush & Nib Studio*, 448 P.3d at 919.  The District also, for the reasons already explained, doesn't have a narrowly tailored compelling interest.  *Supra* Part III.

*     *     *

Our Nation's public officials have quoted scripture in performing their duties from the Founding through today.  Heather Rooks' practice of opening her Board comments time with a brief quotation of scripture fits comfortably within that tradition, so it can't as a matter of law give rise to an Establishment Clause violation.  That being so, the District has no legal basis for pressuring, disrupting, and silencing Rooks.  If anything, the District has violated Rooks' own rights to freedom of speech and religion in its zeal to avoid a "phantom" Establishment Clause violation (or an even flimsier Open Meeting Law violation).

CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to Rooks and award her nominal damages.  The Court should also declare that Rooks has legislative immunity for reciting scripture during her Board comments, she hasn't violated the Establishment Clause, and the District has violated her speech and free exercise rights under both federal and Arizona law.

Dated:  March 14, 2024                    Respectfully submitted,


_/s/ Andrew W. Gould_                     _/s/ Allyson N. Ho_
Andrew W. Gould                           Allyson N. Ho *(admitted pro hac vice)*
HOLTZMAN VOGEL BARAN                       Bradley G. Hubbard *(admitted pro hac vice)*
TORCHINSKY & JOSEFIAK PLLC                 Matthew Scorcio *(admitted pro hac vice)*
2575 East Camelback Rd,                    Elizabeth A. Kiernan *(admitted pro hac vice)*
Suite 860                                 Stephen J. Hammer *(admitted pro hac vice)*
Phoenix, AZ 85016                         Bryston C. Gallegos *(admitted pro hac vice)*
Telephone: (602) 388-1262                 Jason J. Muehlhoff *(admitted pro hac vice)*
State Bar No. 013234                      GIBSON, DUNN & CRUTCHER LLP
*agould@holtzmanvogel.com*                2001 Ross Avenue, Suite 2100
                                          Dallas, Texas  75201
David J. Hacker                           Telephone: (214) 698-3100
*(admitted pro hac vice)*                 Facsimile:  (214) 571-2900
Lea E. Patterson                          *aho@gibsondunn.com*
*(admitted pro hac vice)*                 *bhubbard@gibsondunn.com*
FIRST LIBERTY INSTITUTE                   *mscorcio@gibsondunn.com*
2001 W. Plano Parkway                     *ekiernan@gibsondunn.com*
Suite 1600                                *shammer@gibsondunn.com*
Plano, TX 75075                           *bgallegos@gibsondunn.com*
Telephone: (972) 941-4444                 *jmuehlhoff@gibsondunn.com*
*dhacker@firstliberty.org*
*lepatterson@firstliberty.org*

                         *Attorneys for Plaintiff*

1

**CERTIFICATE OF SERVICE**

2

I certify that, on March 14, 2024, a true and correct copy of this motion was

3

served via electronic service on all counsel of record in this case pursuant to the

4

Federal Rules of Civil Procedure.

5

*/s/ Allyson N. Ho*
Allyson N. Ho *(admitted pro hac vice)*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

27

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Heather Rooks,

       Plaintiff,

   v.

Peoria Unified School District,

       Defendant.

CASE NO. 2:23-CV-02028-MTL

**APPENDIX IN SUPPORT OF PLAINTIFF HEATHER ROOKS' MOTION FOR SUMMARY JUDGMENT**

| Exhibit No. | Document |
|---|---|
| | Declaration of Heather Rooks |
| | Declaration of Matthew Scorcio |
| 1 | 2024.02.15 Defendant Peoria Unified School District's Response to Plaintiff Heather Rooks' First Set of Requests for Admission |
| 2 | 2023.02.12 Message from Dianne Post, on behalf of Secular Communities for Arizona |
| 3 | 2023.05.25 Letter from C. Line, on behalf of Freedom From Religion Foundation, to D. Sandoval |
| 4 | 2023.06.29 Letter from C. Line, on behalf of Freedom From Religion Foundation, to D. Sandoval |
| 5 | 2023.02.23 Email from K. Kontra, Executive Assistant, Superintendent & Governing Board, Peoria Unified School District, to H. Rooks and other recipients |
| 6 | 2023.07.12 Email from L. Smith to H. Rooks and other recipients |
| 7 | 2023.09.19 Peoria City Council Meeting Notice & Agenda |

Allyson N. Ho *(admitted pro hac vice)*
Bradley G. Hubbard *(admitted pro hac vice)*
Matthew Scorcio *(admitted pro hac vice)*
Elizabeth A. Kiernan *(admitted pro hac vice)*
Stephen J. Hammer *(admitted pro hac vice)*
Bryston C. Gallegos *(admitted pro hac vice)*
Jason J. Muehlhoff *(admitted pro hac vice)*
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3100
Facsimile:  (214) 571-2900
*aho@gibsondunn.com*

Andrew W. Gould
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2575 East Camelback Rd,
Suite 860
Phoenix, AZ 85016
Telephone: (602) 388-1262
State Bar No. 013234
*agould@holtzmanvogel.com*

David J. Hacker *(admitted pro hac vice)*
Lea E. Patterson *(admitted pro hac vice)*
FIRST LIBERTY INSTITUTE
2001 W. Plano Parkway
Suite 1600
Plano, TX 75075
Telephone: (972) 941-4444
*dhacker@firstliberty.org*

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| Heather Rooks, | CASE NO. 2:23-CV-02028-MTL |
|---|---|
| Plaintiff, | |
| v. | |
| Peoria Unified School District, | **DECLARATION OF HEATHER ROOKS** |
| Defendant. | |

I, Heather Rooks, declare as follows.

1.    I am over 18 years of age and fully competent to make this declaration, which is based on my personal knowledge.

2.    I have been a member of the Peoria Unified School District Governing Board since January 2023. In my position as a Board member, I attend meetings of the Board.

3.    At Board meetings I attended between January 2023 and July 2023, I recited a short verse of scripture from the Bible as part of my Board comments.

4.    I am a believer in the Christian faith. It is my religious belief that the Bible is the inspired word of God and is profitable to instruct and encourage in all of life. *See*, *e.g.*, 2 Timothy 3:16. In my religious belief and practice, scriptures from the Bible are used to (among other things) guide believers in daily life, fortify and encourage believers, and solemnize occasions.

5.    When I recited a scripture from the Bible at Board meetings, I did so to fortify myself to perform my official duties. Scripture let me express a message of encouragement that was important to me. And it allows me to practice my faith by turning to what I believe is the word of God as the source of this message.

6.    Attached as Exhibit 2 is a true and correct copy of a message submitted to the District by Dianne Post on behalf of Secular Communities for Arizona, dated February 12, 2023.

7.    Attached as Exhibit 3 is a true and correct copy of a letter from Christopher Line, on behalf of Freedom From Religion Foundation, to David Sandoval, dated May 25, 2023.

1

8.      Attached as Exhibit 4 is a true and correct copy of a letter from Christopher Line, on behalf of Freedom From Religion Foundation, to David Sandoval, dated June 29, 2023.

9.      Attached as Exhibit 5 is a true and correct copy of an email from Kimberly Kontra, Executive Assistant, Superintendent & Governing Board, Peoria Unified School District, to me and other recipients, dated February 22, 2023.

10.     Attached as Exhibit 6 is a true and correct copy of an email from Lisa Anne Smith to me and other recipients, dated July 13, 2023.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 13th, 2024.


Heather Rooks - Declarant

2

1

Dated: March 14, 2024                    Respectfully submitted,

2

3       /s/ Andrew W. Gould                      /s/ Allyson N. Ho
        Andrew W. Gould                          Allyson N. Ho *(admitted pro hac vice)*
4       HOLTZMAN VOGEL BARAN                      Bradley G. Hubbard *(admitted pro hac vice)*
        TORCHINSKY & JOSEFIAK PLLC               Matthew Scorcio *(admitted pro hac vice)*
5       2575 East Camelback Rd,                   Elizabeth A. Kiernan *(admitted pro hac vice)*
        Suite 860                                 Stephen J. Hammer *(admitted pro hac vice)*
6       Phoenix, AZ 85016                         Bryston C. Gallegos *(admitted pro hac vice)*
        Telephone: (602) 388-1262                 Jason J. Muehlhoff *(admitted pro hac vice)*
7       State Bar No. 013234                      GIBSON, DUNN & CRUTCHER LLP
        *agould@holtzmanvogel.com*                2001 Ross Avenue, Suite 2100
8                                                 Dallas, Texas 75201
        David J. Hacker                           Telephone: (214) 698-3100
9       *(admitted pro hac vice)*                 Facsimile: (214) 571-2900
        Lea E. Patterson                          *aho@gibsondunn.com*
10      *(admitted pro hac vice)*                 *bhubbard@gibsondunn.com*
        FIRST LIBERTY INSTITUTE                   *mscorcio@gibsondunn.com*
11      2001 W. Plano Parkway                     *ekiernan@gibsondunn.com*
        Suite 1600                                *shammer@gibsondunn.com*
12      Plano, TX 75075                           *bgallegos@gibsondunn.com*
        Telephone: (972) 941-4444                 *jmuehlhoff@gibsondunn.com*
13      *dhacker@firstliberty.org*
        *lepatterson@firstliberty.org*
14

15                                               *Attorneys for Plaintiff*

16

17

18

19

20

21

22

23
                                        3

Allyson N. Ho *(admitted pro hac vice)*
Bradley G. Hubbard *(admitted pro hac vice)*
Matthew Scorcio *(admitted pro hac vice)*
Elizabeth A. Kiernan *(admitted pro hac vice)*
Stephen J. Hammer *(admitted pro hac vice)*
Bryston C. Gallegos *(admitted pro hac vice)*
Jason J. Muehlhoff *(admitted pro hac vice)*
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3100
Facsimile:  (214) 571-2900
aho@gibsondunn.com

Andrew W. Gould
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2575 East Camelback Rd,
Suite 860
Phoenix, AZ 85016
Telephone: (602) 388-1262
State Bar No. 013234
agould@holtzmanvogel.com

David J. Hacker *(admitted pro hac vice)*
Lea E. Patterson *(admitted pro hac vice)*
FIRST LIBERTY INSTITUTE
2001 W. Plano Parkway
Suite 1600
Plano, TX 75075
Telephone: (972) 941-4444
dhacker@firstliberty.org

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Heather Rooks, | CASE NO. 2:23-CV-02028-MTL |
| Plaintiff, | |
| v. | |
| | **DECLARATION OF** |
| Peoria Unified School District, | **MATTHEW SCORCIO** |
| Defendant. | |

I, Matthew Scorcio, declare as follows.

1.      I am over 18 years of age and fully competent to make this declaration, which is based on my personal knowledge.

2.      I am an attorney at the law firm Gibson, Dunn & Crutcher LLP and I represent Plaintiff Heather Rooks in this case.

3.       Attached as Exhibit 1 is a true and correct copy of Defendant Peoria Unified School District's Response to Plaintiff Heather Rooks' First Set of Requests for Admission, dated February 15, 2024.

4.      Attached as Exhibit 7 is a true and correct copy of excerpts from City Council Meeting Notice & Agenda, Tuesday, September 19, 2023 from https://www.peoriaaz.gov/government/departments/city-clerk-office/public-meetings.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 14, 2024.

                          */s/ Matthew Scorcio*
                          Matthew Scorcio

Dated:  March 14, 2024

Respectfully submitted,

*/s/ Andrew W. Gould*
Andrew W. Gould
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2575 East Camelback Rd,
Suite 860
Phoenix, AZ 85016
Telephone: (602) 388-1262
State Bar No. 013234
*agould@holtzmanvogel.com*

David J. Hacker
*(admitted pro hac vice)*
Lea E. Patterson
*(admitted pro hac vice)*
FIRST LIBERTY INSTITUTE
2001 W. Plano Parkway
Suite 1600
Plano, TX 75075
Telephone: (972) 941-4444
*dhacker@firstliberty.org*
*lepatterson@firstliberty.org*

*/s/ Allyson N. Ho*
Allyson N. Ho *(admitted pro hac vice)*
Bradley G. Hubbard *(admitted pro hac vice)*
Matthew Scorcio *(admitted pro hac vice)*
Elizabeth A. Kiernan *(admitted pro hac vice)*
Stephen J. Hammer *(admitted pro hac vice)*
Bryston C. Gallegos *(admitted pro hac vice)*
Jason J. Muehlhoff *(admitted pro hac vice)*
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas  75201
Telephone:  (214) 698-3100
Facsimile:  (214) 571-2900
*aho@gibsondunn.com*
*bhubbard@gibsondunn.com*
*mscorcio@gibsondunn.com*
*ekiernan@gibsondunn.com*
*shammer@gibsondunn.com*
*bgallegos@gibsondunn.com*
*jmuehlhoff@gibsondunn.com*

*Attorneys for Plaintiff*

2

Exhibit 1

James D. Smith, 016760
David D. Garner, 020459
Sarah P. Lawson, 036436
Alexandria N. Karpurk, 037029
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
602-640-9000
jsmith@omlaw.com
dgarner@omlaw.com
slawson@omlaw.com
akarpurk@omlaw.com

Attorneys for Defendant Peoria Unified School District

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Heather Rooks, | No. 2:23-cv-02028-MTL |
| Plaintiff, | RESPONSE TO PLAINTIFF |
| vs. | HEATHER ROOKS'S FIRST SET OF REQUESTS FOR ADMISSION |
| Peoria Unified School District, | |
| Defendant. | |

Peoria Unified School District ("PUSD") responds to Plaintiff Heather Rooks's First Set of Requests for Admission served via electronic mail on January 16, 2024.

OBJECTIONS TO DEFINITIONS

PUSD objects to the definition "You," "Your," and "District" to the extent it includes all "past and present officials, Board members, agents, representatives, employees, and individuals and entities who act, have acted, will act, purport to act, have purported to act, or will purport to act" on PUSD's behalf. This definition is unreasonably overbroad and could include anyone. PUSD limits its responses to the individuals reasonably likely to possess relevant information about the claims and defenses.

/ / /

/ / /

1

### OBJECTIONS TO INSTRUCTIONS

2      PUSD objects to the instruction requiring PUSD to "specifically admit or deny

3  each Request or, if any Request cannot be admitted or denied, set forth in detail the

4  reasons for Your inability to answer that Request, whatever information or knowledge

5  You or Your counsel has concerning the unanswered portion, and the efforts made by

6  You or Your counsel to supply a complete answer."  This instruction adds requirements

7  outside the scope of the Federal Rules of Civil Procedure.  PUSD will follow the

8  requirements set forth in Rule 36(a)(4).

9      PUSD objects to the instruction requiring PUSD to conduct a "reasonable inquiry

10  of any of Your agents."  This definition is overbroad and could include anyone.  PUSD

11  limits its responses to the individuals reasonably likely to possess relevant information

12  about the claims and defenses.

13      PUSD objects to the instruction "if You deny any Request, set forth in detail the

14  reasons for doing so." This instruction adds requirements outside the scope of the Federal

15  Rules of Civil Procedure.  PUSD will follow the requirements set forth in Rule 36(a)(4).

16      PUSD objects to the instruction "where a lack of information or knowledge is

17  asserted as a reason for failure to admit or deny a Request, state in detail the information

18  or knowledge that is unavailable and the efforts made by You or Your counsel to supply

19  an answer."  This instruction adds requirements outside the scope of the Federal Rules of

20  Civil Procedure.  PUSD will follow the requirements set forth in Rule 36(a)(4).

21

### REQUESTS FOR ADMISSION

22      **Request No. 1:** Admit that the Board's "legislative function is the policy making

23  aspect of the school system" and it "is the policy of the Board to retain and exercise full

24  legislative authority and control over the schools."  Peoria Unified School District Policy

25  Manual and Administrative Regulations § BBA.

26      **Response:** PUSD admits this request accurately quotes from a portion of Policy

27  § BBA.

28

**Request No. 2:** Admit that at the time of the communications alleged in Rooks' Complaint ¶¶ 32, 33, 34, 35 and 38, the District had notice of the communication that is Exhibit A to Rooks' Complaint.

**Response:** PUSD admits the communications alleged in Complaint ¶¶ 32, 33, 34, 35, and 38 post-date the communication attached as Exhibit A to the Complaint.

**Request No. 3:** Admit that the Superintendent of the District is responsible for executing the District's policies.

**Response:** PUSD admits that the Superintendent is one of the people responsible for executing the Board's policies per Policy § BDD. PUSD qualifies that this is not the Superintendent's only duty.

**Request No. 4:** Admit that Rooks made no statement during her Board comments that invited or encouraged any other person present to participate in her reciting of scriptures from the Bible.

**Response:** Deny. PUSD is unable to determine how individuals interpreted Ms. Rooks's scripture recitals and is not aware of a way to assess this after the fact.

**Request No. 5:** Admit that a Board member quoting from a published work of literature during a Board meeting does not violate federal or Arizona law.

**Response:** The request is improper under Federal Rule of Civil Procedure 36(a)(1)(A). As written, it does not ask PUSD to apply law to facts. Instead, it is devoid of facts like the nature of the published work, what the Board member read, why the Board member read it, and such.

**Request No. 6:** Admit that You have identified no student who was required to attend a Board meeting at which Rooks recited a scripture from the Bible.

**Response:** PUSD objects to this request because it relies on the erroneous factual predicate that PUSD has been asked to identify students who have attended Board meetings. PUSD admits that it is not currently aware of any students who were required to attend the Board meetings where Ms. Rooks recited a scripture from the Bible, but PUSD cannot currently confirm that no student was required to attend a Board meeting at which Rooks recited a scripture from the Bible.

**Request No. 7:** Admit that students who attend Board meetings do so voluntarily and have no obligation or requirement to stay for any particular amount of time.

**Response:** Deny.

**Request No. 8:** Admit that fewer students attend Board meetings than adults.

**Response:** PUSD denies this request for lack of information because it has not tracked attendance at Board meetings and is not aware of a way to track this after the fact.

**Request No. 9:** Admit that the District did not reprimand or take action against former Board member Cory Underhill for her Board comments on August 25, 2022.

**Response:** Admit. PUSD qualifies this was a one-time occurrence, and it did not receive any complaints regarding Ms. Underhill's comments.

**Request No. 10:** Admit that, except for Plaintiff and former Board member Rebeca Hill, the District has not reprimanded any Board member for his or her comments during Board meetings from January 1, 2019 to the present.

**Response:** PUSD denies this request based on the erroneous factual predicate that Ms. Rooks and Ms. Hill were reprimanded.

/ / /

/ / /

DATED this 15th day of February, 2024.

OSBORN MALEDON, P.A.


By      s/ Alexandria N. Karpurk
        James D. Smith
        David D. Garner
        Sarah P. Lawson
        Alexandria N. Karpurk
        2929 North Central Ave., Ste. 2000
        Phoenix, Arizona 85012-2793

Attorneys for Defendant Peoria Unified School
District

10220454.4

Exhibit 2

**From:** Heather Rooks
**To:** agould@firstliberty.org
**Subject:** Fw: [EXTERNAL] New form response notification
**Date:** Friday, February 17, 2023 9:16:41 AM

---

**From:** Governing Board Input Form <pusdpr@gmail.com>
**Sent:** Sunday, February 12, 2023 1:37 PM
**To:** Heather Rooks <HRooks@pusd11.net>; Rebecca Hill <RHill@pusd11.net>; David Sandoval <DSandoval@pusd11.net>; William Sorensen <WSorensen@pusd11.net>; Melissa Ewing <MeEwing@pusd11.net>; Kimberly Kontra <KKontra@pusd11.net>
**Subject:** [EXTERNAL] New form response notification

**This message originated from outside our district.**

---

Your form has a new entry. Here are all the answers.

| **Your Name** | Dianne Post |
|---|---|
| **Email Address** | postdlpost@aol.com |
|  | February 12, 2023<br>David Sandoval, Governing Board President<br>Heather Rooks, Governing Board Clerk<br>Melissa Ewing, Member<br>Rebecca Hill, Member<br>Dr. Bill Sorenson, Member<br>6330 W. Thunderbird Road<br>Glendale, AZ 85306<br>Sent by online form<br>Dear Governing Board Members,<br>I am writing this letter on behalf of Secular Communities for AZ regarding a constitutional violation. Secular Communities is part of Secular Coalition, a nonprofit organization that represents Arizonans across the state. Our purposes are to protect the constitutional principle of separation between state and church and to educate the public on matters relating to nontheism. We have received complaints about a constitutional violation at your school board meeting on February 9, 2023.<br>During her opening remarks, Member Rooks used her position to engage in unconstitutional proselytizing. At 33:20 on the video tape of the meeting, she read aloud Isaiah 41:10. She addressed students as well thus indicating she knew there were students in the audience. During the public response, a member of the public mentioned that |

reading scripture at a school board meeting was
inappropriate. Member Rooks responded at 1:16:30 that
she had the right to say whatever she wanted presumably
referring to the First Amendment.

That comment indicates a failure to understand the
Constitution and the fact that it protects those rights for
everyone. No right exists completely unbound. In law
school we tritely say that the First Amendment does not
give you the right to shout "fire" in a crowded theatre, and
that the right to swing my arm in the air ends where your
nose begins. Every right in the Constitution, state and
federal, has guardrails around it to protect that same right
for everyone not a chosen few.

It is beyond the scope of a public-school board to conduct
scripture reading as part of its meetings and for a board
member to read scripture at meetings while serving in an
official capacity at that meeting. These practices violate the
Establishment Clause of the First Amendment. See FFRF
v. Chino Valley Unified Sch. Dist. Bd. of Educ., 896 F.3d
1132 (9th Cir. 2018), petition for review en banc denied,
No. 16-55425 (9th Cir., Dec. 26, 2018); Doe v. Indian
River School District, 653 F.3d 256 (3d Cir. 2011), cert.
denied, 132 S. Ct. 1097; Bacus v. Palo Verde Unified Sch.
Dist., 52 Fed. Appx. 355 (9th Cir. 2002); Coles v.
Cleveland Bd. of Educ., 171 F.3d 369 (6th Cir. 1999).

A public-school board is an essential part of the public
school system. See Coles, 171 F.3d at 381 ("[T]he school
board, unlike other public bodies, is an integral part of the
public school system."). Public school boards exist to set
policies, procedures, and standards for education within a
community. The issues discussed and decisions made at
Board meetings are wholly school-related, affecting the
daily lives of district students and parents. The Sixth
Circuit noted in Coles, "although meetings of the school
board might be of a 'different variety' than other school-
related activities, the fact remains that they are part of the
same 'class' as those other activities in that they take place
on school property and are inextricably intertwined with
the public school system." Id. at 377.

Further, in Indian River School District the Third Circuit
Court of Appeals emphasized that school board prayer (and
hence scripture reading) is analogous to other school prayer
cases when it comes to protecting children from the
coercion of school-sponsored prayer (and proselytizing),
which is heightened in the context of public schools. 653
F.3d at 275. In that case, the court held that the school
board meetings are "an atmosphere that contains many of
the same indicia of coercion and involuntariness that the
Supreme Court has recognized elsewhere in its school
prayer jurisprudence." Id. The court's "decision [was]

|   |   |
|---|---|
| **Feedback** | premised on careful consideration of the role of students at school boards, the purpose of the school board, and the principles underlying the Supreme Court's school prayer case law." Id. at 281. The conclusion was that the school board prayer policy "[rose] above the level of interaction between church and state that the Establishment Clause permits." Id. at 290. Member Rooks was aware that students were present as she specifically stated so. While Board members are permitted to address the Board as private citizens, member Rooks comments were clearly directed to the members of the public in attendance, rather than addressing the Board nor did she announce that she was speaking as a private citizen and descend to the public podium.<br><br>In a more recent case striking down a school board's prayer practice, the Ninth Circuit Court of Appeals, that covers Arizona, reaffirmed that Establishment Clause concerns are heightened in the context of public schools "because children and adolescents are just beginning to develop their own belief systems, and because they absorb the lessons of adults as to what beliefs are appropriate or right." Chino Valley, 896 F.3d at 1137. The court reasoned that religion at school board meetings "implicates the concerns with mimicry and coercive pressure that have led us to 'be [] particularly vigilant in monitoring compliance with the Establishment Clause.'" Id. at 1146 (quoting Edwards v. Aguillard, 482 U.S. 578, 583–84 (1987).<br><br>It is important to note that this case is readily distinguishable from the Supreme Court's recent ruling in Kennedy v. Bremerton School District. In Bremerton, the Court held that a high school football coach's silent, private post-game prayer was constitutional. 142 S.Ct. 2407, 2415–16 (2022). Throughout its opinion, the Court repeatedly stressed that the coach silently prayed alone. Id. (the coach "offered his prayers quietly while his students were otherwise occupied."). The prayers "were not publicly broadcast or recited to a captive audience. Students were not required or expected to participate." Id. at 2432. Additionally, the Court concluded the coach's quiet private prayer was private speech. Id. at 2423–24. (the coach's prayer was not given while he was performing official duties such as instructing players, discussing strategy, or encouraging better performance). In contrast, the Board here is allowing a member to use her public position to further her private views.<br><br>Students and parents have the right—and often have reason—to participate in school board meetings. It is coercive, embarrassing, and intimidating for citizens from a different religion or nonreligious citizens to display deference toward a religious sentiment in which they do not believe, |

but which this school board member does. The dangers presented by these practices are only heightened in situations like the February 9th meeting, during which divisive topics such as gender nonconformity and white supremacy were discussed. The coercive and discriminatory impact of these comments are especially troubling because students affected by these policies were in the audience.

Board members are free to read scripture privately or on their own time in their own way. A member may not however abuse their public position to promote their personal religious beliefs. The Board of Education may not to lend its power and prestige to religion which amounts to a governmental endorsement of religion that excludes the thirty-seven percent of Americans who are non-Christian, including the nearly one in three Americans who now identify as religiously unaffiliated.

The State of Arizona's Constitution has an even stronger provision than the federal ensuring the separation of church and state. The State Constitution provides in Article XX §1:

First. Toleration of religious sentiment

First. Perfect toleration of religious sentiment shall be secured to every inhabitant of this state, and no inhabitant of this state shall ever be molested in person or property on account of his or her mode of religious worship, or lack of the same.

In your own Governing Board Operational Goals, you list A.R.S. §15-341(A)(2) as the legal reference for the requirement that schools must exclude all books, publications, papers, or audiovisual materials of a sectarian, partisan or denominational character. A board member may not read scripture without falling afoul of your own rules.

In your oath of office, also in your governing board policy (Board Member Oath of Office), you swear to support the Constitution of the U.S. and AZ. Both constitutions prohibit the establishment of religion by a public body.

Also in your Governing Board manual in the section regarding Board Member Ethics, section (A) says that a board member is to represent everyone not a particular interest group. Thus a board member may not promote a particular religion or any religion at all any more than a board member could promote a particular political party.

Allowing a Board member to read scripture during a meeting is unconstitutional. We ask that you immediately refrain from this practice to uphold the rights of conscience for everyone embodied in our First Amendment. We also ask that Board members cease using their public position to preach their private religious beliefs during Board meetings. Please inform us in writing at your earliest

convenience of the steps you are taking to remedy these
constitutional violations.
Sincerely,
Dianne Post
Legal Director
602 271 9019
legal@secularaz.org

Sent via Google Form Notifications

Exhibit 3

# FREEDOM FROM RELIGION *foundation*

P.O. BOX 750 · MADISON, WI 53701 · (608) 256-8900 · WWW.FFRF.ORG

May 25, 2023

**SENT VIA EMAIL & U.S. MAIL: DSandoval@pusd11.net, HRooks@pusd11.net,
MeEwing@pusd11.net, rhill@pusd11.net, WSorensen@pusd11.net**

David Sandoval
President, PUSD Governing Board
Peoria Unified School District
6330 West Thunderbird Road
Glendale, AZ 85306

Re:    Repeated abuse of school board position to promote religion

Dear President Sandoval and Board members:

I am writing on behalf of the Freedom From Religion Foundation (FFRF) to request that the
Peoria Unified School District take appropriate action to stop board members from using their
government positions to promote their personal religious beliefs. FFRF is a national nonprofit
organization with more than 40,000 members across the country, including more than 1,000
members and a local chapter in Arizona. Our purposes are to protect the constitutional principle
of separation between state and church, and to educate the public on matters relating to
nontheism.

A concerned Peoria Unified School District employee has reported that board member Heather
Rooks has been using her position on the board to foist her personal religious beliefs upon
district parents and community members. Our complainant reports that Ms. Rooks quotes from
the bible at every board meeting, and that other members of the board have started to do so also.
For instance, at the most recent meeting on May 11, board member Rebecca Hill recited a
disturbing bible verse that threatens those who are not Christian, suggesting that non-Christians
or those who lead people away from Christ should be drowned in the sea:

> But whoever causes one of these little ones— who believe in me—to stumble and
> sin by leading him away from my teaching, it would be better for him to have a
> large millstone hung around his neck and to be drowned in the depths of the sea. -
> Matthew 18:6.

Ms. Rooks immediately followed this by quoting 1 Corinthians 2:5: "That your faith might not
rest in the wisdom of men but in the power of God."

We also understand that Ms. Rooks has openly embraced Christian nationalism and invites her
supporters to attend board meetings en masse, sometimes causing disruptions to the official
proceedings.

While board members are free to promote their personal religious beliefs however they wish in their personal capacities outside of the school board, as government officials they cannot be allowed to commandeer the board in order to impose their personal religious beliefs on district students, parents, and employees. We ask that the Board take whatever action necessary to ensure that Ms. Rooks and all other members of the Board respect the constitutional rights of the Peoria Unified School District community.

Our Constitution's Establishment Clause—which protects Americans' religious freedom by ensuring the continued separation of religion and government—dictates that the government cannot in any way show favoritism toward religion. As the Supreme Court has put it, "the First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion." *McCreary Cty. v. ACLU,* 545 U.S. 844, 860 (2005); *Wallace v. Jaffree,* 472 U.S. 38, 53 (1985); *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968); *Everson v. Bd. of Educ. of Ewing,* 330 U.S. 1, 15–16 (1947).

Moreover, "the preservation and transmission of religious beliefs and worship is a responsibility and a choice committed to the private sphere." *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 310 (2000) (quoting *Lee*, 505 U.S. at 589). Allowing board members to use their positions to promote their personal religious beliefs to students and community members during a school board meeting violates these constitutional limits on government religious coercion and sends a message that the government supports religion in general and Christianity specifically. By proselytizing during school board meetings, school board members send a religious message on behalf of the Board that is "impermissible because it sends the ancillary message to . . . nonadherents 'that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community.'" *Santa Fe Indep. Sch. Dist.*, 530 at 309–10 (quoting *Lynch v. Donnelly*, 465 U.S. 668, 688 (1984) (O'Connor, J., concurring)). Furthermore, the Ninth Circuit Court of Appeals has upheld restrictions on employee speech in the course of their government job when such restrictions exist to avoid Establishment Clause violations. *Berry v. Dept. of Soc. Serv.*, 447 F.3d 642 (9th Cir. 2006). "There is no doubt that compliance with the Establishment Clause is a state interest sufficiently compelling to justify content-based restrictions on speech," including in public fora. *Freedom From Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of Educ.*, 896 F.3d 1132, 1151 (9th Cir. 2018) (internal citation omitted).

If board members continue to impose religion on those in attendance, it will subject the school district to unnecessary liability and potential financial strain. When FFRF secured a court order against a California school district regarding its school board prayers, the court ordered the district to pay more than $200,000 in the plaintiffs' attorney fees and costs. *Freedom From Religion Found. v. Chino Valley Unified Sch. Dist.*, No. 5:14-cv-02336-JGB-DTB (C.D. Cal. Feb. 18, 2016).[1] After appeal, the court ordered the district to pay an additional $75,000 for plaintiffs' attorney fees and costs associated with the appeal for a total of more than a quarter million dollars.

---

[1] https://ffrf.org/uploads/legal/FFRFvChinoValley_FeeOrder.pdf

The statements of school board members are attributable to the district. It is inappropriate and unconstitutional for the district or its agents to promote a religious message because it conveys government preference for religion over nonreligion. The Supreme Court has ruled, "[t]he Establishment Clause, at the very least, prohibits government from appearing to take a position on questions of religious belief." *Cty. of Allegheny v. Am. Civil Liberties Union, Greater Pittsburgh Chapter*, 492 U.S. 573, 593–94 (1989).

As school board members, you serve a diverse population that consists not only of Christians, but also minority religious and nonreligious staff members. Religious communications made in your official capacity send a message that excludes those who are among the 37 percent of Americans who are non-Christians, including the nearly one in three adult Americans (29 percent) who are religiously unaffiliated.[2] Religious endorsements coming from your position on the school board needlessly alienate the non-Christian and nonreligious residents of the Peoria Unified School District, turning them into outsiders in their own community. While many residents may support these religious sentiments, a significant proportion are excluded by them.

While board members are certainly free to express their religious beliefs in their private capacity outside of their role as board members, it is unconstitutional for school board members to push their personal religious beliefs during school board meetings. We request that members of the Board refrain from discussing their religious beliefs during meetings in order to uphold the rights of conscience embodied in our First Amendment, and that the Board take whatever action necessary to ensure its compliance with the Constitution. Please inform us in writing at your earliest convenience with an assurance that this won't happen again in the future.

Sincerely,

Christopher Line
Staff Attorney
Freedom From Religion Foundation

---

[2] Gregory A. Smith, *About Three-in-Ten U.S. Adults Are Now Religiously Unaffiliated*, Pew Research Center (Dec. 14, 2021), www.pewforum.org/2021/12/14/about-three-in-ten-u-s-adults-are-now-religiously-unaffiliated/.

Exhibit 4

# FREEDOM FROM RELIGION *foundation*

P.O. BOX 750 · MADISON, WI 53701 · (608) 256-8900 · WWW.FFRF.ORG

June 29, 2023

**SENT VIA EMAIL & U.S. MAIL: DSandoval@pusd11.net, HRooks@pusd11.net,
MeEwing@pusd11.net, rhill@pusd11.net, WSorensen@pusd11.net**

David Sandoval
President, PUSD Governing Board
Peoria Unified School District
6330 West Thunderbird Road
Glendale, AZ 85306

Re:     Continued abuse of school board position to promote religion and denigrate
        non-Christians

Dear President Sandoval and Board members:

I am writing on behalf of the Freedom From Religion Foundation (FFRF) to once again request
that the Peoria Unified School District take appropriate action to stop board members from using
their government positions to promote their personal religious beliefs and denigrate
non-Christian, especially in light of Rebecca Hill's disconcerting comments doubling down on
her attack on non-Christian students, parents, and community members.

It is our understanding that at the most recent school board meeting on June 22, 2023, board
members continued to deliver bible verses and religious messages as official pronouncements in
their role as school board members. We understand that Ms. Rooks recited Hebrews 10:23, "Let
us hold tightly without wavering to the hope we affirm, for God can be trusted to keep his
promise." We also understand that during the public comment period, a concerned District
community member brought up Rebecca Hill's disturbing bible verse implying that
non-Christians should be "drowned in the depths of the sea" that we addressed in our previous
letter, Matthew 18:6:

> But whoever causes one of these little ones— who believe in me—to stumble and
> sin by leading him away from my teaching, it would be better for him to have a
> large millstone hung around his neck and to be drowned in the depths of the sea.

The concerned community member boldly issued an apology to non-evangelical students and
families at the meeting, something that Ms. Hill should have done herself:

> I'd also like to say to any non-evangelical students and families in attendance or
> watching that I'm sorry…Last month, one of the board members called for your
> eradication at the May 22 board meeting. That was wrong, and it should not have
> been said.

After Ms. Rooks prompted Ms. Hill to respond to this public comment, she did but failed to in any way clarify her disturbing message or refute that it was intended to indicate that non-Christian should be eradicated. She only claimed that this odious message was "God's word":

> Yes, I'll respond to that. You're referring to a scripture verse that I commented on. So that was actually God's word that I quoted. So, I am referring to the Gospel, so if you want to look it up…I did not mention it out of my personal speak[sic], it actually was God's word.

We are asking that any board members who value and respect the non-Christian students, families, and community members in Peoria USD stand up for the constitutional rights of all Peoria USD students and families, regardless of their religious beliefs or lack thereof. The board should move to censure any school board members who abuse their position by pushing their personal religious beliefs during board meetings. This would ensure that the board can focus on its students and the important issues arising in the district.

Our nation is founded on a godless Constitution, whose only references to religion in government are exclusionary, such as "no religious test shall ever be required" for public office. U.S. Const. art. VI. The United States was the first nation to adopt a secular constitution, investing sovereignty in "We the People," not a divine entity. In our nation, citizens can be any religion they like or none at all. Non-Christians and non-believers are not second-class citizens and our public officials, including school board members may not take sides on religious matters.

This wise separation between religion and government embodied in the Establishment Clause has largely protected the United States from the religious slaughter and persecution rife around the world and historically whenever the government and religion are aligned:

> "There is no such source and cause of strife, quarrel, fights, malignant opposition, persecution, and war, and all evil in the state, as religion. Let it once enter our civil affairs, our government would soon be destroyed. Let it once enter our common schools, they would be destroyed." *State ex rel. Weiss v. Dist. Bd. of Sch. Dist. No. 8 of City of Edgerton*, 76 Wis. 177, 44 N.W. 967, 981 (1890).

As school board members, you serve a diverse population that consists not only of Christians, but also minority religious and nonreligious students, families, and community members. Promoting Christianity and denigrating non-Christians as school board members is especially concerning when you consider that 49 percent of Generation Z are religiously unaffiliated.[1]

While board members are certainly free to express their religious beliefs in their private capacity outside of their role as board members, it is unconstitutional for school board members to push their personal religious beliefs during school board meetings. We, once again, request that members of the Board refrain from discussing their religious beliefs during meetings in order to

---

[1] 2022 Cooperative Election Study of 60,000 respondents, analyzed by Ryan P. Burge www.religioninpublic.blog/2023/04/03/gen-z-and-religion-in-2022/.

uphold the rights of conscience embodied in our First Amendment, and that the Board take whatever action necessary to ensure its compliance with the Constitution. Please inform us in writing at your earliest convenience informing us of the steps the Board is taking to comply with the law.

Sincerely,

Christopher Line
Staff Attorney
Freedom From Religion Foundation

Exhibit 5

**From:**     Heather Rooks
**To:**        Andy Gould
**Subject:**   Fw: Scripture Reading @ Board Meetings / Board Comments
**Date:**      Wednesday, March 1, 2023 2:39:38 PM

---

**From:** Kimberly Kontra <KKontra@pusd11.net>
**Sent:** Wednesday, February 22, 2023 1:40 PM
**Subject:** Scripture Reading @ Board Meetings / Board Comments

Good afternoon Governing Board,

Recently a fellow board member requested a conversation with the Governing Board's attorney for clarity on the legalities of reading Scripture at board meetings. In summary of the attorney's guidance, a board member acting in their role as such, should not read Scripture during a board meeting, as it violates the Establishment Clause. Legal counsel also stated that the First Amendment is not applicable in this situation, as one is speaking as a member of the public governing body, not an individual. In addition to this topic, it was asked what can be said or shared under Board Comments. The Governing Board attorney stated that Board Comments is meant for a brief summary of current events as it relates to service as a board member, such as school visits, recognizing students, staff, etc. Anything beyond this could be a violation of the Open Meeting Law.

Moving forward, we hope this provides the Governing Board with the legal clarifications needed to conduct efficient business meetings. Please let Dr. Reynolds or myself know if you have any additional questions.


Thank you,

# Kim

**Kimberly R. Kontra**
Executive Assistant, Superintendent & Governing Board

**Peoria Unified School District**
6330 W. Thunderbird Road
Glendale, AZ 85306
623-486-6005
www.peoriaunified.org



Exhibit 6



**From:** Heather Rooks <HRooks@pusd11.net>
**Date:** Thursday, July 13, 2023 at 11:00 AM
**To:** Andy Gould <agould@firstliberty.org>
**Subject:** Fw: ATTORNEY CLIENT PRIVILEGED COMMUNCIATION: Freedom from Religion Foundation letter

---

**From:** Smith, Lisa Anne <lasmith@dmyl.com>
**Sent:** Wednesday, July 12, 2023 9:06 PM
**To:** David Sandoval <DSandoval@pusd11.net>; Rebecca Hill <RHill@pusd11.net>; Heather Rooks <HRooks@pusd11.net>; William Sorensen <WSorensen@pusd11.net>; Melissa Ewing <MeEwing@pusd11.net>
**Cc:** Kimberly Kontra <KKontra@pusd11.net>; Kevin Molino <KMolino@pusd11.net>
**Subject:** [EXTERNAL] ATTORNEY CLIENT PRIVILEGED COMMUNCIATION: Freedom from Religion Foundation letter

**This message originated from outside the district. Do not click links, open attachments, or reply unless you recognize the sender and know the content is safe.**

---

Board members,

I believe that you all received a copy of the attached letter from the Freedom from Religion Foundation.  As you know, this is not the first time that you have been asked by this entity to refrain from offering bible verses during a Governing Board meeting.  The District and I have also been contacted by Secular Arizona regarding the same issue. These entities have threatened that if board members do not stop offering bible verses, they will take further action, such as filing a lawsuit against the District for violating the First Amendment or filing an open meeting law complaint against any board member who recites bible verses.

The law is clear that Board members, acting in their official capacities at Board meetings, may

not pray or offer bible verses at Board meetings because it is a violation of the establishment clause of the U.S. Constitution.  You are likely familiar with the recent case of *Kennedy v. Bremerton School District*, in which the Supreme Court upheld a coach's right to pray on the football field after a football game. In that case, the Supreme Court relied on the fact that the coach's prayer was a silent, post-game activity that happened when students were busy doing other things. The Supreme Court also relied on the fact that the coach's prayer was private speech, because he was not performing his official duties when he engaged in the prayer.  This contrasts with the situation where a board member offers a scripture verse during the meeting itself, while the board member is acting in his/her official capacity.

Furthermore, Arizona law provides that Governing Boards shall "exclude from schools all books, publications, papers or audiovisual materials of a sectarian, partisan or denominational character."  While an oral bible verse offered at a board meeting does not fall squarely within this restriction, this law makes it clear that is the Governing Board's role to keep sectarian materials out of the public schools.

In addition, offering bible verses during a board report is a violation of the Open Meeting Law. The Open Meeting Law prohibits the board, and individual board members, from addressing items not on the agenda during an open meeting. Governing Board reports are permitted pursuant to A.R.S. 38-431.02(H), which permits a board member to "present a brief summary of current events without listing in the agenda the specific matters to be summarized," if the summary is listed in the agenda and no discussion or action is taken. Your agenda does list Board Reports on the agenda and states, "The purpose of this item is for Board members to publicly recognize schools, groups, or individuals who have made a contribution to the district, as well as share information related to their service as Board members." Bible verses offered during the Board reports section of the meeting are not properly part of a permissible "summary of current events" and are not within the description set forth on your agendas.

The risk to the District and to individual board members if board members continue to recite bible verses is twofold. First, one or more of these entities, or individual community members, could sue the school district for violating the First Amendment.  Should this occur, the District would incur significant legal expenses in defending itself against the lawsuit.  If the District lost, which is likely, it would also almost certainly be required to pay the attorneys' fees for the plaintiffs, which would be significant. If the case went to trial, the fees could exceed $100,000. In addition, if the Attorney General were to pursue an open meeting law complaint, she could do so against both the District as a whole and any individual board member who violates the open meeting law.  Violations of the open meeting law can result in fines levied against board members and, in some cases, a lawsuit to remove a board member from office.

For these reasons, it would be in the best interest of the District to cease offering bible verses at Board meetings.  Board members are, of course, free to speak to their religious beliefs, to

pray in public, and to offer bible verses on their own time when they are acting as private citizens and not as public officials.

Best,
Lisa Anne

Lisa Anne Smith
DeConcini McDonald Yetwin & Lacy, P.C.
2525 E. Broadway, Suite 200
Tucson, AZ  85716
(520) 322-5000
(520) 322-5585 (fax)
lasmith@dmyl.com
www.deconcinimcdonald.com

This communication is confidential and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please immediately destroy it and notify the sender by reply e-mail or by telephone (520) 322-5000 (call collect).

NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) regarding the official business of the Peoria Unified School District. Any unauthorized review, use, disclosure, or distribution is prohibited. Arizona public records law prohibits the destruction of this communication, and it may be subject to disclosure unless made exempt by state or federal law.

Exhibit 7

| **Mayor**<br>Jason Beck | **Pine District**<br>Denette Dunn,<br>Vice Mayor | **Willow District**<br>Jon Edwards,<br>Mayor Pro Tem | **Acacia District**<br>Jennifer Crawford | **Ironwood District**<br>Bill Patena | **Mesquite District**<br>Brad Shafer | **Palo Verde District**<br>Michael Finn |
|---|---|---|---|---|---|---|

# City Council Meeting Notice & Agenda

Tuesday, September 19, 2023
City Council Chamber
8401 West Monroe Street
Peoria, AZ 85345



## Special Meeting

### 5:00 P.M. Convene

## Roll Call

### Regular Agenda

## Regular

1 R.  **Authorization to Hold an Executive Session**

Authorize the holding of an Executive Session pursuant to A.R.S. 38-431.03(A)(2), 38-431.03(A)(3) and 38-431.03(A)(4) for the purpose of discussions or consultations with designated representatives of the public body and/or legal counsel in order to consider its position and instruct its representatives regarding:

(a)   Economic Development Project at Peoria Sports Complex, Stadium Point

## Adjournment

# Executive Session

### Convene immediately following Special City Council Meeting
### Executive Room, City Council Chamber

Under the provisions of A.R.S. 38-431.02 there will be a **CLOSED EXECUTIVE SESSION.**

## Executive Session Agenda

2.  An Executive Session pursuant to A.R.S. section 38-431.03(A)(2), 38-431.03(A)(3) and 38-431.03(A)(4) for the purpose of discussions or consultations with designated representatives of the public body and/or legal counsel in order to consider its position and instruct its representatives regarding:

    (a)   Economic Development Project at Peoria Sports Complex, Stadium Point

The above-named Public Body of the City of Peoria, Arizona will convene into Executive Session pursuant to A.R.S. 38-431.03 for those items listed on the agenda. Only those persons who are:

- Members of the Public Body, or
- Officers of the City that are required to attend, or
- Those individuals whose presence is reasonably necessary for the Public Body to carry out its Executive Session responsibilities as determined by the City Attorney may be present during the Executive Session.

All persons who remain present during the Executive Session are reminded that the business conducted in Executive Session, including all discussion taking place herein, is confidential and may not be disclosed to any person, except as permitted by law.

**Arizona Open Meeting Act:**

Arizona law requires that persons who are present in an executive session receive instruction regarding the confidentiality requirements of the Arizona Open Meetings Act. Minutes and discussions made during executive sessions are confidential and may not be disclosed to any party, except:

- Members of the Council,
- Appointees or employees who were subject of discussion under the personnel item subsection of the Open Meetings Act,
- County Attorney or Attorney General pursuant to an investigation of a violation of the Open Meetings Act, and
- Arizona Auditor General in connection with an audit authorized by law.

Any person who violates or who knowingly aids, agrees to aid, or attempts to aid another person in violating the Arizona Open Meetings Law may be punished by fine of up to $500.00 per violation and/or by removal from public office.

# Regular Meeting

## 6:00 P.M. Convene

**Invocation**
**Pledge of Allegiance**
**Roll Call**
**Final Call to Submit Speaker Request Forms**

If you wish to address the City Council, please complete a Speaker Request Form and return it to the Clerk.

<u>**NOTE:**</u>  **The City Council may go into Executive Session at any time during this meeting pursuant to A.R.S. 38-431.03(A)(2) for the purpose of discussion or consideration of records exempt by law from public inspection, including the receipt and discussion of information or testimony that is specifically required to be maintained confidential by state or federal law, and pursuant to A.R.S. 38-431.03(A)(3) for the purpose of discussion or consultation for legal advice with the attorney or attorneys of the public body.**

## Presentation

3.    <u>**Joint Presentation Regarding the Interests of the Peoria Police Officers' Association and the City Council**</u>

## Consent Agenda

**CONSENT AGENDA:** All items listed on the Consent Agenda are considered to be routine or have been previously reviewed and/or discussed by the City Council and will be enacted by one motion. There will be no separate discussion of these items. If the Presiding Officer receives a timely notice of a request for removal, an item may be removed from the Consent Agenda for consideration on the Regular Agenda.

## Consent

4 C.  <u>**Budget Amendment, Peoria Sports Complex Fiscal Year 2023 Expenditure Budget Overage**</u>

Discussion and possible action to approve a budget amendment in the amount of $672,185 from Contingency to the Sports Complex Fund to pay for expenditures in excess of the Fiscal Year 2023 budget.

5 C. **Intergovernmental Agreement, Arizona Game and Fish Commission**

Discussion and possible action to approve an extension of the current Intergovernmental Agreement with the Arizona Game and Fish Commission to maintain Rio Vista, Paloma, and Pioneer Community Park lakes as facilities taking part in the Community Fishing Program, extending the agreement to June 30, 2024.

6 C. **Intergovernmental Agreement, Storage, Recovery and Exchange of Central Arizona Project Water, City of Tucson, Central Arizona Project Water Shortage Preparation, Pima County**

Discussion and possible action to enter into an Intergovernmental Agreement between City of Peoria and City of Tucson, substantially in the form as presented, to facilitate the storage, recovery, and exchange of Central Arizona Project water.

7 C. **Intergovernmental Agreement, State of Arizona, Deer Valley Road Adaptive Signal Control Technology**

Discussion and possible action to adopt **RES. 2023-103** approving an Intergovernmental Agreement with the State of Arizona to procure and install Adaptive Signal Control Technology at nine traffic signals on Deer Valley Road between 107th Avenue and 79th Avenue, in accordance with budget authority previously approved by Council.

8 C. **Agreement, Dead End Treatment, Vistancia Maintenance Corporation, Jomax Road and 126th Drive**

Discussion and possible action to approve an Agreement between the City of Peoria and the Vistancia Maintenance Corporation for the construction and maintenance of a Dead-End Treatment at Jomax Road and 126th Drive.

9 C. **Agreement, Dead End Treatment, Vistancia Maintenance Corporation, Lone Mountain Parkway and 138th Avenue**

Discussion and possible action to approve an Agreement between the City of Peoria and the Vistancia Maintenance Corporation for the construction and maintenance of a Dead-End Treatment at Lone Mountain Parkway and 138th Avenue.

10 C. **Agreement, Development and Reimbursement, Greystar, Peoria Place**

Discussion and possible action to approve a Development and Reimbursement Agreement with GS Peoria Residential Property Owner, LLC, GBFR PEORIA PLACE LLC, and Peoria Place Property Owner, LLC, (collectively "Greystar") for Greystar's proportional cost contribution towards (a) the installation and construction of a future traffic signal at 83rd Avenue / Whitney Drive and Cotton Crossing; and (b) implementation and construction of traffic calming measures.

11 C. **Ice Machine Replacement at Municipal Operations Center**

Discussion and possible action to approve a budget amendment in the amount of $120,000 from the General Fund Contingency account to Facilities to replace the existing single ice machine and bin at the Municipal Operations Center with three new ice makers and dispensers.

12 C. **Deeds and Easements, Various Locations**

Discussion and possible action to adopt **RES. 2023-104** accepting Deeds and Easements for various Real Property interests acquired by the City. The deeds and easements have been recorded by the Maricopa County Recorder's Office and this process will formally accept them into the system.

## Regular Agenda

## New Business

13 R. **PUBLIC HEARING - Liquor Licenses, Various Locations**

Discussion and possible action to recommend approval to the State Liquor Board for: (a) a Location Transfer for an Off-Sale All (Series 09) Liquor License for Circle K Store #9176, located at 6735 West Peoria Avenue, Maria D. Burgess, Applicant, LL#10015098; (b) a New Restaurant (Series 12) Liquor License for Ta'Carbon The Real Mexican Grill, located at 6750 West Peoria Avenue #101, Gilberto Trujillo Gonzalez, Applicant, LL#23-010857.

14 R. **Contract Amendment, Construction Guaranteed Maximum Price, Sports Complex Maintenance Building and Site Improvements, Peoria Sports Complex at 83rd Avenue and Stadium Way**

Discussion and possible action to approve a contract amendment to Haydon Building Corp for a Not-To-Exceed Guaranteed Maximum Price amount of $6,306,022 for the construction of a new Sports Complex maintenance building, secure maintenance equipment yard, and related roadway, utility, and maintenance staff parking improvements located at the Peoria Sports Complex at 83rd Avenue and Stadium Way.

15 R. **Grant, Water Infrastructure Finance Authority of Arizona, Water Conservation Grant Fund, Parks & Recreation Water Conservation Program**

Discussion and possible action to: a) accept a grant from the Water Infrastructure Finance Authority of Arizona in the amount of $2,523,750 for targeted turf reductions throughout the Parks and Recreation footprint; b) enter into the 2024 Water Infrastructure Finance Authority Grant funding agreement; and c) authorize a budget amendment from Contingency to Parks and Recreation Grants Fund.

**Call To The Public (Non-Agenda Items)**
The City Council is not authorized by state law to discuss or take action on any issue raised by public comment until a later meeting.

## Reports from City Manager

## Reports from Council Youth Liaisons

## Reports from the Mayor

## Adjournment

**NOTE:** Documentation (if any) for items listed on the Agenda is available for public inspection, a minimum of 24 hours prior to the Council Meeting, at any time during regular business hours in the Office of the City Clerk, 8401 W. Monroe Street, Room 150, Peoria, AZ 85345.

*Accommodations for Individuals with Disabilities: Alternative format materials, sign language interpretation and assistive listening devices are available upon 72 hours advance notice through the Office of the City Clerk, 8401 West Monroe Street, Peoria, Arizona 85345 - Phone: (623) 773-7340 or FAX (623) 773-7304. To the extent possible, additional reasonable accommodations will be made available within the time constraints of the request. The City has a TDD line where accommodations may be requested at: (623) 773-7221.*

**Public Notice**

In addition to the City Council members noted above, one or more members of the City of Peoria Boards and Commissions may be present to observe the City Council meeting as noticed on this agenda.

City Council Meetings can be viewed live on Channel 11 (Cox Cable) and are available for viewing on demand at https://www.peoriaaz.gov/government/mayor-and-city-council/city-council-videos

| **City Manager** | **City Clerk** |
|---|---|
| Henry Darwin | Agnes Goodwine |