| | |
|---|---|
| 1 | Julie Gunnigle (AZ Bar 032124)<br>Full Spectrum Law Collective, PLLC |
| 2 | 335 E Palm Lane<br>Phoenix, AZ 85004 |
| 3 | (480)266-0129<br>Julie@fullspectrumlawyers.com |
| 4 | Attorney for Amici Curiae |

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Heather Rooks, | No. CV-23-02028-PHX-MTL |
| Plaintiff, | |
| v. | BRIEF *AMICI CURIAE* OF THE FREEDOM FROM RELIGION FOUNDATION AND SECULAR COALITION FOR ARIZONA |
| Peoria Unified School District | |
| Defendant. | |

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENTS ................................................... 1

ARGUMENT ........................................................................................................ 2

    I.   This Court must dismiss this case for lack of Article III jurisdiction ............ 2

        A.  This case is not ripe for adjudication because Rooks has not yet suffered an injury-in-fact. ........................................................................ 2

        B.  This Court must decline to adjudicate the Establishment Clause issue due to lack of adversity between the parties. .................................... 8

    II.  Rooks ignores and misstates Establishment Clause precedent .................... 10

        A.  Coercion disqualifies a practice, even under the history and tradition test ................................................................................................ 12

        B.  Rooks' religious remarks fail the "no coercion" requirement within the history and tradition test, as exemplified in Chino Valley ...................... 13

CERTIFICATE OF SERVICE ............................................................................ 17

# CORPORATE DISCLOSURE STATEMENTS

The Freedom From Religion Foundation, Inc. ("FFRF") is a nationally recognized 501(c)(3) educational nonprofit incorporated in 1978. FFRF has no parent corporation and issues no stock. The Secular Coalition for Arizona is a 501(c)(3) nonprofit incorporated in 2010. Secular Coalition for Arizona has no parent corporation and issues no stock.

# INTEREST OF AMICI[1]

The Freedom From Religion Foundation is the largest national association of freethinkers, representing atheists, agnostics, and others who form their opinions about religion based on reason, rather than faith, tradition, or authority. FFRF has over 40,000 members nationally, including over 1,000 members and a chapter in Arizona. FFRF's purposes are to educate about nontheism and to preserve the cherished constitutional principle of separation between religion and government.

The Secular Coalition for Arizona is a nonpartisan, nonprofit advocacy organization that protects the constitutional separation of church and state and educates lawmakers and the public to ensure freedom of conscience for Arizonans of all faiths and of none.

---

[1] All parties have consented to the filing of this brief. No party's counsel in this case authored this brief in whole or in part. No party or party's counsel contributed any money intended to fund preparing or submitting this brief. No person, other than Amici, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

# ARGUMENT

## I. This Court must dismiss this case for lack of Article III jurisdiction.

"This is a case in search of a controversy." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1137 (9th Cir. 2000). Plaintiff Rooks has not been materially harmed by the Defendant, the Governing Board of the Peoria Unified School District ("Board"), and thus this case cannot proceed because there is no actual case or controversy to adjudicate. Rather than a true case or controversy, Rooks presents this Court with a request for an advisory opinion, based on a hypothetical future in which her rights might be violated. Under the Constitution, Article III courts may only decide cases or controversies. *Carney v. Adams*, 592 U.S. 53, 58 (2020). "[N]o justiciable controversy is presented . . . when the parties are asking for an advisory opinion." *Flast v. Cohen*, 392 U.S. 83, 95, 88 (1968). "[W]hen presented with a claim for a declaratory judgment, therefore, federal courts must take care to ensure the presence of an actual case or controversy, such that the judgment does not become an unconstitutional advisory opinion." *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007).

### A. This case is not ripe for adjudication because Rooks has not yet suffered an injury-in-fact.

Because the Board has not taken any materially adverse action against Rooks, this Court must dismiss her case, because any hypothetical actions the Board might take in the future are not ripe for review. A dispute must be ripe in

order to satisfy Article III's case or controversy requirement. *Thomas*, 220 F.3d at 1138. "A dispute is ripe in the constitutional sense if it presents concrete legal issues, presented in actual cases, not abstractions." *Montana Env't Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014) (cleaned up) (internal citations omitted). Ripeness is a question of timing meant to prevent courts "from entangling themselves in abstract disagreements." *Thomas,* 220 F.3d at 1138 (internal citations omitted). While the Ninth Circuit has chosen at times to apply less stringent ripeness standards in First Amendment cases, "[t]his does not mean, however, that any plaintiff may bring a First Amendment claim by nakedly asserting that his or her speech was chilled…." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173–74 (9th Cir. 2022) (cleaned up) (internal citations omitted). A concrete injury "must actually exist." *Id.* at 1175 (internal citations omitted).

There is a "prudential component" of ripeness, and that component relies on two guiding principles: (1) whether the issues before the court are fit for adjudication; and, (2) the hardship, if any, that will befall either party if the court declines to issue a judgment on the merits. *Thomas*, 220 F.3d at 1141 (internal citations omitted). To be fit for adjudication, a case must present a "concrete factual situation." *Id.* As to hardship, a party arguing for adjudication must persuade the court that it will experience actual hardship if the court defers resolution of the matter "to a time when a real case arises." *Id.* at 1142. In contrast, in proving lack of ripeness a defendant may point to the hardship it will experience if it's forced to argue a case that lacks the necessary foundation of real, concrete,

non-hypothetical facts. *Id.* Since a court's role "is neither to issue advisory opinions nor to declare rights in hypothetical cases," a court must dismiss any case before it that proves unripe for review. *Id.* at 1138.

In this case, Rooks has not asserted a concrete factual situation ripe for this Court's review. The Board received two letters from third parties—the amici—arguing that Rooks' actions violated the law and potentially alienated non-Christian and nonreligious meeting citizens, including students. *See* Rooks Mot. Summ. J. 5. But, to state the obvious, FFRF and Secular Coalition for Arizona do not represent the Board, the District, the Board's attorney, or any other government official. And while she alleges that the Board's attorney then counseled the Board that members reading scripture during meetings in their official capacities violates both state and federal law, *see* Rooks Mot. Summ. J. at 6–7, receiving legal advice from one's own counsel does not amount to an injury-in-fact. The Board has not formally censured Rooks, the Board has not moved to remove Rooks from her seat, the Board has not prevented Rooks from performing her duties, the Board has not taken legal action against Rooks, nor taken any other concrete adverse action against her. *See* Def.'s Resp. to Pl.'s Mot. Summ. J. & Cross-Mot. Summ. J. (hereinafter "Def.'s Mot.") at 1, 8. What Rooks' complaint ultimately amounts to is that she received legal advice, in her official capacity as a Board member, and she disagrees with that advice. She urges this Court to issue an advisory opinion declaring that she has the legal right to do something that the government has not actually prevented her from doing.

  The Supreme Court has already dealt with a situation strikingly similar to the one before this Court. In *Houston Community College System v. Wilson*, 595 U.S. 468 (2022), a community college system's board of trustees member, Wilson, was verbally censured by the board for certain inappropriate public conduct, including speech. *See* 595 U.S. at 478–79. Wilson was not removed from the board or prevented from acting out his duties as a board member. *Id.* at 472–73. The only adverse action that the board took against Wilson was the verbal censure. *Id.* at 478–79. The Court ultimately found the board's censure did not "qualify as a materially adverse action consistent with our case law." *Id.* at 497. In explaining its decision, the Court noted that "[t]he censure at issue . . . was a form of speech by elected representatives," "[i]t concerned the public conduct of another elected representative," and "[e]veryone involved was an equal member of the same deliberative body." *Id.* Further, the verbal censure did not prevent Wilson from doing his job, it "did not deny him any privilege of office," and the censure was not allegedly defamatory. *Id.*

  Here, as in *Wilson*, there is no true case or controversy within the meaning of Article III. This case is not being litigated "under the impact of a lively conflict between antagonistic demands, actively pressed[.]" *Poe v. Ullman*, 367 U.S. 497, 503 (1961). Rooks is still a member of the Board, *see* Rooks' Mot. Summ. J. at 1, and thus, as in *Wilson*, the parties in this case remain equal members of the same board. *See* 595 U.S. at 497; *see also* Def.'s Mot. at 1 (noting that "To this day, Ms.

5

Rooks continues to possess and exercise without restriction all the powers, duties, and privileges of her office").

While in *Wilson* the Board had officially verbally censured the plaintiff, here, Rooks fails to allege even that much. The Board has not officially verbally censured her or removed her from her seat. *See* Def.'s Mot. at 8. The Board has not prevented Rooks from performing her duties. *Id.* The Board has not taken legal action against Rooks. *Id.* at 1. In short, the Board has done nothing to Rooks that she can point to as a materially adverse action. Rooks admits as much in her own briefing. She states that District officials warned her that reading scripture at Board meetings might violate the law. *See* Rooks Mot. Summ. J. at 6. She alleges that the Board's attorney advised the Board of the same, and that individual Board members reminded Rooks of the legal advice while she was reading scripture and reiterated that her conduct was likely illegal. *See id.* at 6–7. Receiving warnings and legal advice that one disagrees with does not amount to the kind of injury-in-fact that Article III demands. Until the Board takes a materially adverse action against Rooks, there is no case or controversy for this Court to adjudicate. This Court must decline to issue Rooks the advisory opinion she seeks.

The lack of government action in this case is particularly significant in the context of a quasi-legislative body because many of the actions that the Board *might* eventually contemplate taking are expressly immune from review by this Court as legislative actions. In *Bogan v. Scott-Harris*, the Supreme Court held that local legislative bodies enjoy absolute immunity for legislative actions. *See* 523

6

U.S. 44, 49 (1998). The Court reasoned that the same rationales that justify immunity for state and federal legislative bodies extend to local legislative bodies as well. *Id.*; *see also Tenney v. Brandhove*, 341 U.S. 367, 372 (1951) (holding that legislative bodies must be able to carry out their legislative duties free from what would otherwise be a constant fear of legal consequences); *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1135 (9th Cir. 2012) (noting that legislators are entitled to immunity against § 1983 claims for their legislative acts); *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 959 (9th Cir. 2010) ("Local government officials are entitled to legislative immunity for their legislative actions, whether those officials are members of the legislative or the executive branch.") (citing *Bogan*, at 54–55); *Kaahumanu v. Cnty. of Maui,* 315 F.3d 1215, 1219 (9th Cir. 2003) ("The Supreme Court has long held that state and regional legislators are absolutely immune from liability under § 1983 for their legislative acts."). Rooks asks this Court to weigh in upon a hypothetical abstraction that very well may not ever come to pass, and if it does, there's a good chance that the action taken by the Board would be immune from review by an Article III court.

      Finally, this Court should find that this case is unripe because Rooks has failed to show that she will suffer any actual hardship if this case is deferred until "a real case arises." *Thomas*, 220 F.3d at 1142. Rooks is still a member of the Board, on equal footing with its other members. Rooks is not suffering from a credible threat of removal or any other materially adverse action. While this litigation has been pending, Rooks has continued to carry out her duties as a Board

7

1  member uninhibited. In short, Rooks will not suffer a hardship if this Court defers
2  this case until presented with an actual, concrete factual situation ripe for review.
3  For these reasons, this Court should decline Rooks' invitation to declare rights in a
4  hypothetical case and instead dismiss this case for lack of ripeness.

**B. This Court must decline to adjudicate the Establishment Clause issue due to lack of adversity between the parties.**

This Court must decline to adjudicate the Establishment Clause issue because there is no genuine adversity between Rooks and the Board. Parties must be genuinely adverse to one another for an actual case or controversy to exist. Article III's cases and controversies requirement limits "federal courts to questions presented in an adversary context . . . ." *Flast*, 392 U.S. at 94–95. Federal courts lack "authority to act in friendly or feigned proceedings." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71 (1997). "[A]ny attempt, by a mere colorable dispute, to obtain the opinion of the court upon a question of law which a party desires to know for his own interest or his own purposes, when there is no real and substantial controversy between those who appear as adverse parties to the suit, is an abuse which courts of justice have always reprehended[.]" *Lord v. Veazie*, 49 U.S. 251, 255 (1850). "[W]ithin the framework of our adversary system, the adjudicatory process is most securely founded when it is exercised under the impact of a lively conflict between antagonistic demands, actively pressed, which make resolution of the controverted issue a practical necessity." *Poe*, 367 U.S. at 503. "[T]he question is whether, based on all the circumstances, there remains a

8

substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1030–31 (9th Cir.), cert. denied, 144 S. Ct. 190 (2023) (internal citations omitted); *see also Navajo Nation v. Off. of Navajo & Hopi Indian Relocation*, 631 F. Supp. 3d 776, 793 (D. Ariz. 2022).

On the Establishment Clause issue, Rooks is asking this Court to evaluate whether her conduct amounts to a constitutional violation, a question which, if answered in the affirmative, would create legal liability for the District. Rooks is the *perpetrator* of the religious conduct at issue, not one of the many community members whose constitutional rights are violated when she uses her government platform to advance her personal religious beliefs. And the District is the government entity ultimately responsible for upholding the Establishment Clause, the entity that would ultimately face legal liability for an Establishment Clause violation. Because it is not in either party's legal interest to argue that it would, in fact, be an Establishment Clause violation if the Board permitted Rooks to continue promoting her personal religious beliefs while conducting official business on behalf of the Board, the parties lack adversity on this issue, making it particularly inappropriate for this Court to resolve.

As argued above, this Court lacks jurisdiction to issue an advisory opinion regarding the issues presented in this case. *See* Sec. I.A., *supra*. But it would be particularly inappropriate for the Court to issue an advisory opinion regarding the

9

Establishment Clause issue because the citizens whose rights are being violated—community members represented by organizations like Secular Coalition for Arizona and FFRF—have not been given an opportunity to fully litigate this claim. Establishment Clause issues are notoriously fact sensitive, as each court to have considered religious remarks at school board meetings has acknowledged. *See, e.g.*, *Freedom From Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of Educ.*, 896 F.3d 1132, 1144 (9th Cir. 2018); *Am. Humanist Ass'n v. McCarty*, 851 F.3d 521, 528 n.21 (5th Cir. 2017); *Doe v. Indian River Sch. Dist.*, 653 F.3d 256, 265 (3d Cir. 2011); *Coles ex rel. Coles v. Cleveland Bd. of Educ.*, 171 F.3d 369, 382 (6th Cir. 1999). Notably, the Board opted not to conduct discovery essential to properly litigating the Establishment Clause claim. As argued below, the lack of factual findings ultimately doom Rooks' motion for summary judgment. *See* Sec. II., *infra*. But even if this Court did have the factual foundation needed to resolve the Establishment Clause claim, it would still be a miscarriage of justice to resolve a constitutional question implicating the rights of citizens not represented in this lawsuit when neither party to the proceedings has a legal incentive to robustly argue on citizens' behalf.

**II.     Rooks ignores and misstates Establishment Clause precedent.**

Because this Court lacks Article III jurisdiction, it is precluded from issuing the advisory opinion that Rooks requests regarding the District's potential future liability under the Establishment Clause. But even if the Court had jurisdiction to

adjudicate Rooks' request, Rooks has misidentified the applicable legal test and all but ignored binding precedent from the Ninth Circuit Court of Appeals that applied the test in an analogous situation and found that religious remarks delivered at school board meetings do, in fact, violate the Establishment Clause. Rooks has thus failed to meet her burden to sustain a motion for summary judgment on her Establishment Clause claim.[2]

The Ninth Circuit Court of Appeals has already ruled that including religious remarks as part of an official school board meeting where children are present violates the Establishment Clause. *See Chino Valley*, 896 F.3d at 1145. Rooks relegates her entire treatment of this binding precedent to a single footnote, where she dismisses it for its "reliance on *Lemon*" in reaching its result. *See* Rooks Mot. Summ. J. at 9 n.2. Rooks never mentions *Chino Valley* again, despite it featuring prominently in the legal analysis communicated to the Board by both the Secular Coalition for Arizona, *see id.* Ex. 2 at 48, 49, and the Freedom From Religion Foundation, *see id.* Ex. 3 at 54. While the part of the *Chino Valley* court's analysis dealing with the *Lemon* test is no longer good law, *see* 896 F.3d at 1148–51 (Sec. III. C.), the court primarily focused its Establishment Clause analysis on the history and tradition test outlined in *Town of Greece*, *see id.* at 1142–48 (Sec. III. A. & B.); distinguished school board religious remarks from the legislative prayers at issue in *Town of Greece* and from the student remarks at issue in

---

[2] Her other claims—free speech and free exercise under the federal Constitution and Arizona Constitution—all fail for lack of any official government action.

11

*McCarty*, *see id.* at 1143–45; and concluded that within the school board context the "audience, unlike the audience in the legislative-prayer cases, therefore implicates the concerns with mimicry and coercive pressure that have led us to 'be[ ] particularly vigilant in monitoring compliance with the Establishment Clause.'" *Id.* at 1146 (citing *Edwards v. Aguillard*, 482 U.S. 578, 583–84 (1987)). This same approach to the Establishment Clause continues to control in post-*Lemon* cases, meaning that *Chino Valley* remains binding precedent. Rooks' refusal to engage with that precedent is fatal to her claim.

### A. Coercion disqualifies a practice, even under the history and tradition test.

All of the cases on which Rooks principally relies—*Kennedy*, *Town of Greece*, and *McCarty*—leave no doubt that coercion matters even when a practice would otherwise pass muster under the history and tradition test. In *Kennedy* the Supreme Court treated government coercion as " among the foremost hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment." 597 U.S. at 537. The Court stated clearly that the government may not "force citizens to engage in 'a formal religious exercise.'" *Id.* (quoting *Lee v. Weisman*, 505 U.S. 577, 589 (1992)); *see also Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203 (1963) (holding "readings, without comment, from the Bible" unconstitutional in the public school context). In *Town of Greece*, the three-Justice plurality took the view that "[i]t is an elemental First Amendment principle that government may not coerce its citizens 'to support or participate in any

12

religion or its exercise.'" 572 U.S. at 586 (Kennedy, J., plurality op.). And, just as in *Town of Greece*, the *McCarty* court explicitly considered the potential coercive effects of that school board's practice after it concluded that the history and tradition exception applied. *See McCarty*, 851 F.3d at 526. But more important than the Fifth Circuit's analysis of the practice "of inviting *students* to deliver statements, which can include invocations, before school-board meetings," 851 F.3d at 523 (emphasis added), is the Ninth Circuit's conclusion that the far more analogous practice of a school board adopting an official "prayer policy" violated the Establishment Clause. *Chino Valley*, 896 F.3d at 1139. The *Chino Valley* court applied a coercion analysis to the practice at issue, *see* Sec. II.B., *infra*, leaving no doubt that government coercion continues to violate the Establishment Clause.

      **B.**      **Rooks' religious remarks fail the "no coercion" requirement within the history and tradition test, as exemplified in *Chino Valley*.**

In *Chino Valley*, the Ninth Circuit was extremely concerned with the prospect that school-aged children attending a school board meeting might experience coercive pressure during the board's prayer practice. The court distinguished "the sort of solemnizing and unifying prayer, directed at lawmakers themselves and conducted before an audience of mature adults *free from coercive pressures to participate*, that the legislative-prayer tradition contemplates," from school board prayers that "typically take place before groups of schoolchildren whose attendance is not truly voluntary and whose relationship to school district

13

officials, including the Board, is not one of full parity." 896 F.3d at 1142 (emphasis added). The Ninth Circuit did not create this distinction itself, but rather relied principally on *Marsh v. Chambers*, 463 U.S. 783 (1983)—the case that originally announced the history and tradition exception—where the Supreme Court "contrasted the adult plaintiff's relative lack of vulnerability to potential coercion with children's susceptibility to indoctrination and peer pressure." 896 F.3d at 1145 (citing 463 U.S. at 792). The *Chino Valley* court concluded that while legislative prayer may benefit from a history and tradition that insulates it from an Establishment Clause challenge, "[g]overnment-sponsored prayer in [the school board] context therefore poses a greater Establishment Clause problem," because the audience "implicates the concerns with mimicry and coercive pressure that have led us to 'be[ ] particularly vigilant in monitoring compliance with the Establishment Clause." 896 F.3d. at 1146.

In concluding that the legislative invocations were not coercive, the *Town of Greece* plurality relied on several factors that distinguish legislative prayer from the PUSD Governing Board's practice. First, the *Town of Greece* plurality emphasized that "[t]he principal audience for these invocations is not, indeed, the public but lawmakers themselves . . . ." 572 U.S. at 587; *see also McCarty*, 851 F.3d at 527 (noting that "the board members are the invocations' primary audience" and that the plaintiffs had "not shown otherwise"). Conversely, the religious remarks made at Board meetings are not directed to the Board members themselves, but rather, are delivered during the portion of the meeting set aside for

14

"Board members to publicly recognize [others]" and to "share information." Def.'s Mot. at 4 n.5.

Second, in *Town of Greece* the plurality relied on the fact that the legislative prayers were delivered by guest ministers, *see* 572 U.S. at 588, whereas here it is Rooks, acting in her official capacity as a Board member, who is injecting personal religious beliefs into the proceedings. This is particularly relevant given the Ninth Circuit's observation that "[u]nlike legislative entities . . . school districts—and by extension, school boards—exercise control and authority over the student population." 896 F.3d at 1146. "Beyond direct physical control, the school district also holds a more subtle power over the students' academic and professional futures, which manifests itself in the program at Board meetings." *Id.* at 1147. The existence of such coercive pressure remains a fact-sensitive inquiry. The Chino Valley Board's power manifested through its ability "to suspend and expel students," "to waive[ ] high school graduation requirements in specific cases," and to "bestow[ ] recognition on particular district students." *Id.* Rooks holds similar power over students as a member of the PUSD Governing Board.

Third, the *Town of Greece* plurality relied on the prayers' being delivered during the ceremonial portion of the town's meeting, rather than close in time to the governmental body's decision making. *See* 572 U.S. at 591. Justice Alito emphasized in his concurrence that the prayer "preceded only the portion of the town board meeting that I view as essentially legislative." *Id.* at 594 (Alito, J., concurring). *McCarty* was similarly concerned with this factor, concluding that

15

there was no coercion because the invocations at issue there were delivered during the "ceremonial" as opposed to decision making portion of the meeting. 851 F.3d at 526. Importantly, when *McCarty* was decided, the board of the Birdville Independent School District bifurcated its meetings, holding closed sessions at 5 pm, during which it performed its quasi-adjudicatory functions, such as discipline and personnel dismissals, while the challenged student-led prayers were delivered before the board's open sessions, which commenced at 7 pm and involved purely legislative duties. *See* Ps.' Third Appx. Tab 52 (Appellants' Record Excerpts, Tabs 18–20 in *Am. Humanist Ass'n v. McCarty*, No. 16-11220 (BISD Bd. of Trustees Reg. Meeting Agendas and/or Meeting Minutes for Dec. 11, 2014 & Jan. 22, 2015). There is no similar bifurcation of PUSD Governing Board meetings, which makes it analogous to the meetings in *Chino Valley*, not those in *McCarty*.

On the issue of proximity to decision making, *McCarty* is thus consistent with *Chino Valley* and the two other appeals court decisions regarding school board prayer. The Ninth Circuit emphasized that the Chino Valley Board's meetings "are not solely a venue for policymaking, they are also a site of academic and extracurricular activity and an adjudicative forum for student discipline." 896 F.3d at 1145. Similarly, the Third Circuit noted in *Doe v. Indian River School District* that "it is particularly difficult to imagine that a student would not feel pressure to participate in the [prayer] practice, or at least appear to agree with it—particularly a student appearing in front of the Board to contest a disciplinary action." 653 F.3d 256, 278 (3d Cir. 2011). And in *Coles v. Cleveland Board of*

*Education* the Sixth Circuit wrote, "Students wishing to challenge disciplinary action must appear before the board . . . For these students, school board meetings are far more coercive than graduation exercises. In *Lee* [*v. Weisman*], the students were celebrating the end of their association with the school, while here the students might well be fighting to maintain it."171 F.3d 369, 383 (6th Cir. 1999); *see also Lund v. Rowan County*, 863 F.3d 268, 287–88 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 2564 (2018) (striking down a municipal board's prayer practice, post-*Town of Greece*, because "the commissioners considered citizen petitions shortly after the invocation," and the "close proximity between a board's sectarian exercises and its consideration of specific individual petitions" "presents … the opportunity for abuse"). Rooks' religious remarks fail each factor found relevant to the coercion analysis in each of these cases.

## CONCLUSION

For the reasons set forth above, this Court must dismiss this case for lack of Article III jurisdiction. On the merits, *Chino Valley* remains binding precedent, under which Rooks' statements are impermissibly coercive and unconstitutional.

Respectfully submitted, on April 18, 2024.

/s/ Julie Gunnigle
Julie Gunnigle (AZ Bar 032124)
Full Spectrum Law Collective, PLLC
335 E Palm Lane
Phoenix, AZ 85004
(480)266-0129
Julie@fullspectrumlawyers.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2024 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record in this matter.

s/ Julie Gunnigle